IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, 10 S. Howard Street, 3rd Floor Baltimore, MD 21201 | ) ) ) ) | Civil Action No. |
| | ) ) | COMPLAINT |
| Plaintiff, | ) ) | |
| v. | ) ) | JURY TRIAL DEMAND |
| PHASE II INVESTMENTS, INC. f/k/a MARITIME AUTOWASH, INC. AND MARITIME AUTOWASH, II, 6619 S. Dixie Highway, PMB 193 Miami, FL 33143 | ) ) ) ) ) ) | |
| and | ) ) | |
| CWP WEST CORP. T/A MISTER CAR WASH, 222 East Fifth Street Tucson, AZ 85705 | ) ) ) ) | |
| Defendants. | ) | |

## NATURE OF ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, ("Title VII") and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices and to provide appropriate relief to Charging Parties Elmer Escalante, Godofredo Esquivel Platero, Luis Serrano, Jose Luis Dominguez, Gabriela Espinoza, Saul Herrera, Santos Villacorta, Eddy Cervantes, and Merced Espinosa Diaz, and a class of aggrieved Hispanic employees who were adversely affected by such practices. As alleged with greater particularity below, the U.S. Equal Employment Opportunity Commission ("the Commission") alleges that since at least April 1, 2006, Defendant Phase II Investments, Inc. and Defendant CWP West Corp. (collectively

"Defendants") have subjected the Charging Parties and a class of aggrieved Hispanic employees

to a hostile work environment based on race (Hispanic) and national origin (Hispanic).

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337,

1343, and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§§ 2000e-5(f)(1) and (3) ("Title

VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the

jurisdiction of the United States District Court for the District of Maryland, Northern Division.

Venue is proper in this Court.

## PARTIES

3.      Plaintiff, the U.S. Equal Employment Opportunity Commission (the

"Commission"), is an agency of the United States of America charged with the administration,

interpretation, and enforcement of Title VII and is expressly authorized to bring this action by

Section 706 (f)(1) and (3) of Title VII, 42 U.S.C. 2000e-5(f)(1) and (3).

4.      From at least April 1, 2006 through April 7, 2015, Maritime Autowash, Inc.

conducted business in the cities of Edgewater and Millersville, Maryland, and continuously had

at least fifteen employees.

5.      From at least April 1, 2006 through April 7, 2015, Maritime Autowash, II

conducted business in the cities of Edgewater and Millersville, Maryland, and continuously had

at least fifteen employees.

2

6.       From at least April 1, 2006 through April 7, 2015, Maritime Autowash, Inc. was a Maryland corporation engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. Section 2000e-(b), (g), and (h).

7.       From at least April 1, 2006 through April 7, 2015, Maritime Autowash, II was a Maryland corporation engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. Section 2000e-(b), (g), and (h).

8.       Defendant Phase II Investments, Inc. ("Defendant Phase II") is a Florida corporation resulting from the merger of former Maryland corporations Maritime Autowash, Inc. and Maritime Autowash, II on April 8, 2015.

9.       Since at least November 12, 2014, Defendant CWP West Corp T/A Mister Car Wash ("Defendant Mister Car Wash") has continuously been a Delaware corporation doing business in the State of Maryland and has had at least fifteen employees.

10.      Since at least November 12, 2014, Defendant Mister Car Wash has engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. Section 2000e-(b), (g), and (h).

11.      On January 21, 2015, Defendant Mister Car Wash purchased and obtained all of the real property and tangible assets of Maritime Autowash, Inc. and Maritime Autowash, II, including the two car wash facilities located in Edgewater and Millersville, Maryland.

12.      Defendant Mister Car Wash purchased the Edgewater and Millersville facilities for the purpose of operating full-service car washes at these locations.

3

13.     At the time of purchase, Defendant Mister Car Wash did not expand the facilities, buy additional property, or make substantial structural changes at the facilities located in Edgewater and Millersville, Maryland.

14.     Defendant Mister Car Wash assumed the inventory of Maritime Autowash, Inc. and Maritime Autowash, II, including chemicals, cleaning supplies, and automotive products.

15.     Defendant Mister Car Wash assumed the rights to all trade secrets, computer software, internet websites and domain names, customer lists, mailing lists and sales and advertising material pertaining to Maritime Autowash, Inc. and Maritime Autowash, II.

16.     Following its purchase, Defendant Mister Car Wash continued to use the Maritime Autowash signage for advertising purposes for several months.

17.     From January 21, 2015 through at least October 6, 2015, Defendant Mister Car Wash utilized the website of Maritime Autowash, Inc. and Maritime Autowash, II (www.maritimeautowash.com) to advertise its car wash services at its Edgewater and Millersville facilities.  The website continued to use the Maritime Autowash name and made no reference to Mister Car Wash during this period of time.

18.     From January 21, 2015 through at least May 19, 2015, Defendant Mister Car Wash utilized the Twitter© page of Maritime Autowash, Inc. and Maritime Autowash, II (@M_autowash).   On January 27, 2015, Defendant Mister Car Wash solicited applications for employment on Maritime's Twitter© account.   The Twitter© account continued to use the Maritime Autowash name and made no reference to Mister Car Wash during this period of time.

19.     From January 21, 2015 through at least March 19, 2015, Defendant Mister Car Wash utilized the Facebook page of Maritime Autowash, Inc. and Maritime Autowash, II.  On

February 2, 2015, Defendant Mister Car Wash solicited applications for employment on Maritime's Facebook© account. The Facebook© account continued to use the Maritime Autowash name and made no reference to Mister Car Wash during this period of time.

20.     As of June 2015, forty percent of Mister Car Wash's Maryland workforce (70 employees) were former employees of Maritime Autowash, Inc. and Maritime Autowash, II.  Of these 70 employees, 11 were supervisors.

21.     As a result of its purchase, Defendant Mister Car Wash obtained Maritime's Sitewatch© program which contained electronic personnel information relating to employees previously employed by Maritime Autowash, Inc. and Maritime Autowash, II.

22.     Since its purchase of Maritime Autowash, Inc. and Maritime Autowash, II, there has been a substantial continuity of business operations by Defendant Mister Car Wash.

23.     Defendant Mister Car Wash continues to operate the Edgewater and Millersville facilities using the same machinery and equipment used by Maritime Autowash, Inc. and Maritime Autowash, II.

24.     At the time of purchase, Defendant Mister Car Wash had actual notice of the EEOC charges which serve as the jurisdictional basis for this action.

25.     It is not assured that Defendant Phase II has had, or currently has, the ability to provide the relief in this matter.

26.     Defendant Mister Car Wash is liable in this matter under the principles of successor liability.

27.     More than thirty days prior to the institution of this lawsuit, Charging Parties Elmer Escalante, Godofredo Esquivel Platero, Luis Serrano, Jose Luis Dominguez, Gabriela

Espinoza, Saul Herrera, Santos Villacorta, Eddy Cervantes, and Merced Espinosa Diaz filed charges with the Commission alleging violations of Title VII by Defendants.

28.     On March 17, 2017, the Commission issued to Defendants a Letter of Determination finding reasonable cause to believe that they violated Title VII and inviting them to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

29.     On March 17, 2017, the Commission issued a conciliation proposal which included an offer of monetary and non-monetary terms to endeavor to eliminate the discriminatory practices and provide appropriate relief.

30.     The Commission engaged in communications with Defendants to provide them the opportunity to remedy the discriminatory practices described in the Letters of Determination.

31.     The Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

32.     On June 14, 2017, the Commission issued to Defendants a Notice of Failure of Conciliation.

33.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

### COUNT I -- HOSTILE WORK ENVIRONMENT

34.     Since at least April 1, 2006, Defendants have engaged in unlawful employment practices in violation of Sections 703(a)(1) and (a)(2) of Title VII, 42 U.S.C. §2000e-2(a)(1) and (a)(2) by subjecting Charging Parties Elmer Escalante, Godofredo Esquivel Platero, Luis Serrano, Jose Luis Dominguez, Gabriela Espinoza, Saul Herrera, Santos Villacorta, Eddy

6

Cervantes, and Merced Espinosa Diaz ("Charging Parties") and a class of aggrieved Hispanic employees to a hostile work environment based on their race (Hispanic) and national origin (Hispanic).

<u>Disparate Assignment of Duties, Denial of Wages, & Denial of Promotions</u>

35.     Defendants generally classified the workforce into the following categories: Cashier; Detailer; Laborer; and Key Employee.

36.     Those who occupied the position of Cashier and Key Employee were hired at a starting wage rate of $10.00/hour.  Those who occupied the positions of Detailer or Laborer, were hired at a wage rate ranging from $7.25 (minimum wage) to $8.00/hour.

37.     Defendants relegated the Charging Parties and the class of aggrieved Hispanic employees to Laborer or Detailer positions and never offered them the opportunity to move from such positions, notwithstanding their tenure and outstanding performance with the company.

38.     Several Charging Parties and the class of aggrieved Hispanic employees remained in the same positions at or close to minimum wage, even though they began working for Maritime many years prior.

39.     While Defendants did employ a few non-Hispanic employees in Laborer or Detailer positions, those individuals were hired at a higher wage, worked part-time, and/or were quickly promoted into a "Key Employee" position.

40.     Defendants primarily assigned the non-Hispanic employees to the more lucrative Key Employee positions even when they lacked any experience whatsoever.

7

Denial of Overtime and Full Tips

41.     In addition to paying the Charging Parties and the class of aggrieved Hispanic employees lower wages, Defendants also denied them the opportunity to be compensated for working beyond 40 hours.

42.     In or around April 2006 through approximately 2010, Defendants told the Charging Parties and the class of aggrieved Hispanic employees that they were "salaried" and thus could not be compensated for the 20-30 hours of overtime they performed on a weekly basis.

43.     Later when Defendants changed to paying them an hourly rate, Defendants' management had the Charging Parties and the class of aggrieved Hispanic employees punch out when the car wash was slow and punch back in when the car wash business picked up. Defendants required that the Charging Parties and the class of aggrieved Hispanic employees stay at the facility even when they punched out.

44.     Defendants distributed tips unevenly in favor of the non-Hispanic employees.

45.     Defendants on occasion told the Hispanic employees that the tip money was to be used to purchase cleaning supplies.

Required to Perform Duties without Additional Compensation

46.     On the rare occasion when the Charging Parties and the class of aggrieved Hispanic employees were not required to punch out during a slow period, or when it rained, Defendants required them to perform other duties on the property without additional compensation.  For instance, Defendants assigned the male Hispanic employees to wash down

the car tunnel and machinery, powerwash the property, perform landscaping duties, pick up trash around the property, or build a retaining wall on the property. Defendants assigned the female Hispanic employees to perform cleaning duties on the inside of the building. In contrast, the non-Hispanic employees remained in the building drinking coffee and talking amongst themselves.

47.     Defendants also utilized the Charging Parties and the class of aggrieved Hispanic employees to perform non-job related activities for the personal benefit of the owner and managers.

48.     Defendants routinely assigned the female Hispanic employees to clean the houses of the owner or manager and assigned the male Hispanic employees to perform duties at their homes, such as landscaping, cleaning the pool, picking up dog excrement, painting, or helping with moves. Defendants also assigned the Hispanic employees to clean the cars of a local auto dealership in the area, Prestige.

49.     Defendants did not compensate the Charging Parties and the class of aggrieved Hispanic employees for these additional duties.

Inferior Privileges and Benefits of Employment and Intimidation

50.     Defendants provided the Charging Parties and the class of aggrieved Hispanic employees with inferior privileges and benefits of employment.

51.     Defendants required the Charging Parties and the class of aggrieved Hispanic employees to eat outside on a hill by the car wash, drink unfiltered water, and utilize an unlocked unisex bathroom which needed repair and contained a camera at its entrance.

52.     Defendants refused the Charging Parties and the class of aggrieved Hispanic employees a full 30 minute lunch break and refused to grant them work breaks, and if they tried to take such a break, Defendants refused them and demanded that they work.

53.     Defendants denied the Charging Parties and the class of aggrieved Hispanic employees the proper equipment that they needed to perform their extra assigned duties and protect their safety.  For instance, when cleaning the tunnel or the 12,000 gallon underground recycling tanks that collect rainwater and storm water runoff, Defendants provided them with used boots that had holes in them, forcing them to wrap plastic bags around their feet for protection from the chemicals.  Defendants also did not provide them with the necessary protective gear for cleaning the facilities, leading them to use trash bags and tape to cover themselves.

54.     In contrast, Defendants provided the building security code to the non-Hispanic employees so that they could be in the air conditioning, have access to filtered water and ice, a refrigerator, microwaves, and gender-specific restroom facilities.   On many occasions, Defendants even provided food for those non-Hispanic employees who were allowed to eat inside.

55.     Unlike the basic company t-shirt and sweatshirts Defendants provided to the Charging Parties and the class of aggrieved Hispanic employees, Defendants provided higher quality collared shirts and warm jackets to the non-Hispanic employees.

56.     When Defendants won a community award, it had the non-Hispanic employees pretend to wash the cars for a photo opportunity, and then rewarded the non-Hispanic employees

with a party, intentionally excluding the Charging Parties and the class of aggrieved Hispanic employees.

57.     Defendants also openly mistreated the Charging Parties and the class of aggrieved Hispanic employees.   For instance, managers openly called them "mother fuckers," barked commands to them, screamed "fuck you" at them, and threatened them with discharge. Defendants' managers did not display similar conduct toward the non-Hispanic employees.

58.     Because the Charging Parties and the class of aggrieved Hispanic employees did not have a place to put their food/drinks and belongings (unlike the non-Hispanic employees who could enter the building), Defendants' managers frequently threw away their food and drinks.  On one occasion, a manager even threw away the backpack of one of the Charging Parties.

59.     Defendants' managers excessively monitored the Hispanic employees through security video cameras located inside the building.

<u>Discharge</u>

60.     The Charging Parties and the class of aggrieved Hispanic employees regularly complained to Defendants' management regarding the lower wages, denial of advancement opportunities, and other disparate working conditions, but their complaints went unanswered.

61.     On July 27, 2013, the Charging Parties and some of the class of aggrieved Hispanic employees complained to Owner David Podrog and General Manager Kyle Decker concerning the mistreatment they had been receiving, including not being given a 30 minute lunch break, not being given time for breaks, not being given vacation and sick time, not having their wages increased, being harassed by the managers, not being given the same purified water which was given to the non-Hispanic employees, using a bathroom which needed to be repaired

11

and had a camera at its entrance, and not being recognized for their work, in contrast to Defendants' treatment towards the non-Hispanic employees. Ignoring their demands, the General Manager told them that if they did not report to work that day at 1:00 p.m., they would be fired.

62. Finding intolerable the harassment that the General Manager refused to address, Charging Parties and some of the aggrieved Hispanic employees did not appear for work at 1:00 p.m., and Defendants terminated their employment.

63. The effect of the practices complained of above has been to deprive Charging Parties Elmer Escalante, Godofredo Esquivel Platero, Luis Serrano, Jose Luis Dominguez, Gabriela Espinoza, Saul Herrera, Santos Villacorta, Eddy Cervantes, and Merced Espinosa Diaz, and a class of aggrieved Hispanic employees of equal employment opportunities and otherwise adversely affect their status as employees because of race (Hispanic) and national origin (Hispanic).

## COUNT II -- INFERIOR ECONOMIC TERMS AND CONDITIONS OF EMPLOYMENT

Disparate Assignment of Duties, Denial of Wages, & Denial of Promotions

64. Since at least April 1, 2006, Defendants have engaged in unlawful employment practices in violation of Sections 703(a)(1) and (a)(2) of Title VII, 42 U.S.C. §2000e-2(a)(1) and (a)(2) by subjecting Charging Parties Elmer Escalante, Godofredo Esquivel Platero, Luis Serrano, Jose Luis Dominguez, Gabriela Espinoza, Saul Herrera, Santos Villacorta, Eddy Cervantes, and Merced Espinosa Diaz, and a class of aggrieved Hispanic employees inferior

economic terms and conditions of employment based on their race (Hispanic) and national origin (Hispanic).

65.     Defendants generally classified the workforce into the following categories: Cashier; Detailer; Laborer; and Key Employee.

66.     Those who occupied the position of Cashier and Key Employee were hired at a starting wage rate of $10.00/hour.   Those who occupied the positions of Detailer or Laborer, were hired somewhere between $7.25 (minimum wage) and $8.00/hour.

67.     Defendants relegated Charging Parties and the class of aggrieved Hispanic employees to Laborer or Detailer positions and never offered them the opportunity to move from such positions, notwithstanding their tenure and outstanding performance with the company.

68.     Several Charging Parties remained in the same Laborer positions at or close to minimum wage even though they began working for Maritime many years prior.

69.     While Defendants did employ a few non-Hispanic employees in Laborer or Detailer positions, those individuals were hired at a higher wage, worked part-time, and/or were quickly promoted into a "Key Employee" position.

70.     Defendants primarily assigned the non-Hispanic employees to the more lucrative Key Employee position even when they lacked any experience whatsoever.

71.     Payroll records reveal the average age of a Key Employee at hire was 19 years old and ranged from 16 to 29 years of age.

Denial of Overtime and Full Tips

72.     In addition to paying the Charging Parties and the class of aggrieved Hispanic employees lower wages, Defendants also denied them the opportunity to be compensated for working beyond 40 hours.

73.     In the earlier years, Defendants told the Charging Parties and the class of aggrieved Hispanic employees that they were "salaried" and thus could not be compensated for the 20-30 hours of overtime they performed.

74.     Later, when Defendants changed to paying them an hourly rate, Defendants' management had the Charging Parties and the class of aggrieved Hispanic employees punch out when the car wash was slow and punch back in when the car wash business picked up. Defendants required that the Charging Parties and the class of aggrieved Hispanic employees stay at the facility even when they punched out.

75.     Defendants distributed tips unevenly in favor of the non-Hispanic employees.

76.     Defendants on occasion told the Hispanic employees that the tip money was to be used to purchase cleaning supplies.

Required to Perform Duties without Additional Compensation

77.     When the Charging Parties and the class of aggrieved Hispanic employees were not required to punch out during a slow period or when it rained, Defendants required them to perform other duties on the property without additional compensation.  For instance, Defendants assigned the male Hispanic employees to wash down the car tunnel and machinery, powerwash the property, perform landscaping duties, pick up trash around the property, or build a retaining wall on the property.  Defendants assigned the female Hispanic employees to perform cleaning

duties on the inside of the building.  In contrast, the non-Hispanic employees remained in the building drinking coffee and talking amongst themselves.

78.     Defendants also utilized the Charging Parties and class of aggrieved Hispanic employees to perform non-job related activities for the personal benefit of the owner and managers.

79.     Defendants routinely assigned the female Hispanic employees to clean the houses of the owner or manager and assigned the male Hispanic employees to perform duties at their homes, such as landscaping, cleaning the pool, picking up dog excrement, painting, or helping with moves. Defendants also assigned the Hispanic employees to clean the cars of a local auto dealership in the area, Prestige.

80.     Defendants did not compensate the Charging Parties and the class of aggrieved Hispanic employees for these additional duties.

81.     The effect of the practices complained of above in Counts I and II have been to deprive a class of Hispanic employees of equal employment opportunities and otherwise affect their status as employees because of their race (Hispanic) and national origin (Hispanic).

82.     The effect of the practices complained of above in Counts I and II has been to deprive Charging Parties Elmer Escalante, Godofredo Esquivel Platero, Luis Serrano, Jose Luis Dominguez, Gabriela Espinoza, Saul Herrera, Santos Villacorta, Eddy Cervantes, and Merced Espinosa Diaz, and a class of aggrieved Hispanic employees of equal employment opportunities and otherwise adversely affect their status as employees because of race and national origin.

83.     The unlawful employment practices complained of above in Counts I and II were and are intentional.

15

84.     The unlawful employment practices complained of above in Counts I and II were and are done with malice or with reckless indifference to the federally protected rights of Charging Parties Elmer Escalante, Godofredo Esquivel Platero, Luis Serrano, Jose Luis Dominguez, Gabriela Espinoza, Saul Herrera, Santos Villacorta, Eddy Cervantes, and Merced Espinosa Diaz, and a class of aggrieved Hispanic employees.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendants, their officers, successors, assigns and all persons in active concert or participation with them, from discriminating on the bases of national origin or race;

B.      Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for Hispanic employees, and which eradicate the effects of their past and present unlawful employment practices;

C.      Order Defendants to make whole Charging Parties Elmer Escalante, Godofredo Esquivel Platero, Luis Serrano, Jose Luis Dominguez, Gabriela Espinoza, Saul Herrera, Santos Villacorta, Eddy Cervantes, and Merced Espinosa Diaz, and a class of aggrieved Hispanic employees by providing appropriate back pay with prejudgment interest for work performed;

D.      Order Defendants to make whole Charging Parties Elmer Escalante, Godofredo Esquivel Platero, Luis Serrano, Jose Luis Dominguez, Gabriela Espinoza, Saul Herrera, Santos Villacorta, Eddy Cervantes, and Merced Espinosa Diaz, and a class of aggrieved Hispanic employees by providing compensation for pecuniary and nonpecuniary losses, including emotional pain, suffering, anxiety, depression, embarrassment, degradation, and humiliation;

16

E.      Order Defendants to pay Charging Parties Elmer Escalante, Godofredo Esquivel

Platero, Luis Serrano, Jose Luis Dominguez, Gabriela Espinoza, Saul Herrera, Santos Villacorta,

Eddy Cervantes, and Merced Espinosa Diaz, and a class of aggrieved Hispanic employees

punitive damages for the malicious and reckless conduct described above, in amounts to be

determined at trial;

F.      Grant such further relief as the Court deems necessary and proper in the public

interest; and

G.      Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by the Complaint.


Respectfully submitted,


JAMES L. LEE
Acting General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel


DEBRA M. LAWRENCE
Regional Attorney


MARIA SALACUSE
Supervisory Trial Attorney
Bar No. 15562
maria.salacuse@eeoc.gov
(410) 209-2733


17

AMBER TRZINSKI FOX
Trial Attorney
amber.fox@eeoc.gov
(410) 209-2763


EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
10 S. Howard Street, 3rd Floor
Baltimore, Maryland  21201

18