# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff<br><br>v.<br><br>PHASE 2 INVESTMENTS, INC. F/K/A MARITIME AUTOWASH, INC., *et al.*,<br><br>Defendants | Civil Action No. JKB-17-2463 |

### DECLARATION OF CASEY LINDSAY

I, Casey Lindsay, make the following declaration under penalty of perjury pursuant to 28 U.S.C Section 1746 and declare that the following is true and correct.

1. I am employed by Car Wash Partners, Inc. d/b/a Mister Car Wash ("Mister Car Wash") as its Vice President, Mergers and Acquisitions in Tucson, Arizona. I am an adult and I am competent to testify. This declaration is based upon my own personal knowledge and Mister Car Wash's books and records.

2. I make this declaration in support of Mister Car Wash's Motion to Dismiss Plaintiff's Complaint or, Alternatively, Motion for Summary Judgment in the above-captioned matter. I understand that the above-captioned matter involves claims on behalf of nine individuals whom the EEOC alleges were employed by Maritime Autowash, Inc. and/or Maritime Autowash, II (collectively, "Maritime Autowash"): Elmer Escalante, Godofredo Esquivel Platero, Luis Serrano, Jose Luis Dominguez, Gabriela Espinoza, Saul Herrera, Santos Villacorta, Eddy Cervantes, and Merced Espinosa Diaz (collectively, "Claimants").

1

3. On or about October 8, 2014, Mister Car Wash and Maritime Autowash entered into a letter of intent for Mister Car Wash to purchase the assets of Maritime Autowash.

4. The purchase price specified in the letter of intent was in excess of $15,000,000.

5. After signing the letter of intent, the parties commenced the due diligence process and began negotiating the terms of an asset purchase agreement.

6. Prior to the execution of the letter of intent and the fixing of the purchase price, Maritime Autowash had not disclosed to Mister Car Wash the existence of any pending lawsuits or claims by employees.

7. The purchase was intentionally structured as an asset acquisition to avoid assuming any existing liabilities of Maritime Autowash, except those specifically agreed to as part of the (to be negotiated) asset purchase agreement.

8. During the due diligence process, Maritime Autowash disclosed that it had received charges of discrimination filed by the Claimants, among others. Based on Maritime Autowash's continued assurances, records reflecting that all of the charging parties (including the Claimants) had long since left employment with Maritime Autowash, and Maritime Autowash's failure to disclose its ongoing battles with the EEOC, Mister Car Wash did not negotiate for a lower purchase price.

9. Attached hereto as Exhibit A is a true and correct copy of the October 8, 2014 Letter of Intent from Mister Car Wash to Mr. David Podrog. As noted in the document, references to the purchase price have been redacted to protect this confidential and proprietary business information.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 27, 2017.

_____
Casey Lindsay

3

# EXHIBIT A



222 E. 5th Street, Tucson, Arizona 85705
520-615-4000 fax 520-615-4002 www.mistercarwash.com

October 8, 2014

Mr. David Podrog
Maritime Autowash, Inc.
2473 Solomons Island Road
Edgewater, MD 21037

    Re: Letter of Intent for the purchase of the Business Assets located at
    2473 Solomons Island Rd., Edgewater, MD and 8562 Veterans Highway,
    Millersville, MD.

Dear Mr. Podrog:

  This letter ("Letter of Intent") indicates the basis upon which CWP West Corp. or an affiliate ("Buyer") is prepared to purchase all of the business assets (excluding cash and accounts receivable) and goodwill of the above named car washes from Maritime Autowash, Inc. ("Seller").

  This is a Letter of Intent only. Except for the provisions of Section 3(c) (Expenses), Section 6 (Exclusivity) and Section 7 (Confidentiality) hereof, which shall be binding on the parties hereto and shall survive the termination of this Letter of Intent, this Letter of Intent is not, nor under any circumstances shall it be, legally binding upon any party hereto. It is, however, an indication of our mutual good faith intent to negotiate a binding agreement. This Letter of Intent does not and shall not impose upon either party an enforceable duty or obligation to negotiate towards or conclude any agreement or commitment to enter into any legally binding agreement. This Letter of Intent is predicated on the information provided to date by the Seller to Buyer.

  1. <u>Purchase Price</u>. The purchase price shall be fifteen million ($15,000,000.00) Dollars, less the amount of any liabilities of the Seller which the Buyer assumes pursuant to the Agreement defined below (the "Purchase Price"). This amount assumes no exclusion of assets, except cash and accounts receivable, or material adverse change to assets or business of the Seller from the estimates provided by Seller, and it assumes that Buyer will assume the existing land lease for the Edgewater property.

  If the Seller is able to purchase the Edgewater land from the Lessor and transfer title to that land to Buyer, the purchase price will be increased to ██████████.

  2. <u>Form of Payment</u>. The Purchase Price will be paid in cash at Closing by certified funds or wire transfer.

Mr. David Podrog
Maritime Autowash, Inc.
Oct. 8, 2014
2

3. <u>Definitive Purchase and Sale Agreement ("Agreement")</u>. The parties shall use their best efforts to enter into a mutually satisfactory definitive Asset Purchase Agreement consistent with this Letter of Intent and containing other customary terms and conditions as requested by Buyer or Seller. Buyer's counsel shall prepare the initial draft of the Agreement. If the Agreement is not executed within ninety (90) days from the date of Seller's execution of this Letter of Intent, this Letter of Intent shall terminate, unless otherwise extended in writing by the parties.

(a) <u>Assets to be Acquired.</u> The Seller shall sell, transfer, convey and assign to Buyer, and Buyer will purchase from Seller, all property (real, personal or other) and rights of the Seller relating to or used in connection with the Seller's business.

(b) <u>Representations, Warranties and Covenants.</u> Seller's warranties and representations in the Agreement shall be accurate and Seller's covenants in the Agreement shall have been performed. Seller shall guarantee the accuracy of its financial statements.

(c) <u>Expenses.</u> Each party will bear its own expenses. As to any real estate to be acquired by Buyer, the Seller shall pay taxes to closing, costs for an Owner's Policy of Title Insurance by an insurer reasonably acceptable to Buyer, and applicable state deed tax. Seller to provide all existing real estate surveys and/or environmental reports and/or appraisals in its possession, custody or control to Buyer. To the extent Buyer or its financing source requires updated surveys or environmental assessments, Buyer may obtain same and the cost of such will be split equally by the parties.

4. <u>Buyer's Conditions to Closing.</u>

(a) <u>Due Diligence Period.</u> Buyer shall be satisfied, in its sole discretion, with its legal, financial and other due diligence, including appraisals, surveys, examinations and environmental tests. The Seller will cooperate fully with Buyer and its representatives in this regard. Assuming the Seller's cooperation, Buyer shall have ninety (90) days from the date of Seller's execution of this Letter of Intent to conclude its due diligence. Seller agrees during the due diligence period to not make any adverse changes to Seller's operations, including but not limited to, abnormal salary or compensation adjustments, new commission or bonus programs, or to enter into any contract long term in nature or out of the ordinary course of business.

(b) <u>Covenants and Conditions.</u> Warranties and representations of the Seller and/or owners in the Agreement shall be accurate as of the closing date and Seller's covenants in the Agreement shall have been performed.

(c) <u>Non-Competition Agreements.</u> The Seller and/or its principals and key managers of Seller, as identified by Buyer, shall enter into non-competition agreements with Buyer, in a form acceptable to Buyer. Consideration for such non-competition agreements shall be included in the amount on which the Purchase Price is based.

Mr. David Podrog
Maritime Autowash, Inc.
Oct. 8, 2014
3

    (d)    Financing Contingency. Buyer shall have received financing, if any, upon such terms as are acceptable to Buyer to consummate the transaction.

    5.    Closing. The closing of the transactions contemplated in this Letter of Intent shall occur within ninety (90) days from the date of the Seller's execution of this Letter of Intent.

    6.    Exclusivity. Until termination of this letter, as provided in paragraph 3 of this letter, the Seller shall not solicit or accept any offers or engage in any negotiations and/or discussions concerning the sale or lease by Seller of its business, or any equity interest in the Seller, with any other person or entity.

    7.    Confidentiality. The parties shall keep confidential the existence and terms of this Letter of Intent and any non-public oral or written information concerning the other, and will not disclose the same except to advisors, potential lenders and investors, or as required by law. If the parties have executed any Confidentiality Agreement between them, to the extent there is any conflict between such agreement and this Letter of Intent, the terms and conditions of such Confidentiality Agreement shall control.

This Letter of Intent shall terminate and be of no further force and effect if it is not signed and returned before the close of business on Oct. 17, 2014. This Letter of Intent may be executed in counterparts and by facsimile signature. Facsimile signatures shall be binding upon the party making the facsimile transmittal, effective as of the date of delivery of the facsimile signature.

Sincerely,

CWP WEST CORP.

By: *Lawrence J. Minich* (signature)
Lawrence J. Minich
Vice President & Special Advisor

ACCEPTED AND AGREED TO:

Maritime Autowash, Inc.
By: *(signature)*
Its: PRESIDENT
Date: 10/10/14