# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>    Plaintiff<br><br>    v.<br><br>PHASE 2 INVESTMENTS, INC. F/K/A MARITIME AUTOWASH, INC., *et al.*,<br><br>    Defendants | Civil Action No. JKB-17-2463 |

## DECLARATION OF LAWRENCE J. MINICH

I, Lawrence J. Minich, make the following declaration under penalty of perjury pursuant to 28 U.S.C Section 1746 and declare that the following is true and correct.

1.    I am employed by Car Wash Partners, Inc. d/b/a Mister Car Wash ("Mister Car Wash") as its Vice President and Special Adviser in Tucson, Arizona. I am an adult and I am competent to testify. This declaration is based upon my own personal knowledge and Mister Car Wash's books and records.

2.    I make this declaration in support of Mister Car Wash's Motion to Dismiss Plaintiff's Complaint or, Alternatively, Motion for Summary Judgment in the above-captioned matter. I understand that the above-captioned matter involves claims on behalf of nine individuals whom the EEOC alleges were employed by Maritime Autowash, Inc. and/or Maritime Autowash, II (collectively, "Maritime Autowash"): Elmer Escalante, Godofredo Esquivel Platero, Luis Serrano, Jose Luis Dominguez, Gabriela Espinoza, Saul Herrera, Santos Villacorta, Eddy Cervantes, and Merced Espinosa Diaz (collectively, "Claimants").

3. As part of the due diligence process, Mister Car Wash asked Maritime Autowash to disclose any and all pending lawsuits or claims by employees, and Maritime Autowash provided position statements earlier prepared by its counsel responding to EEOC charges filed by some of the Claimants following their termination of employment by Maritime Autowash during 2013, together with the October 20, 2014, letter from Maritime Autowash's counsel stating Maritime Autowash had an Employment Practices Liability Insurance policy with $1,000,000 in coverage and that such counsel would be surprised if the Claimants' damages would exceed $1,000,000.

4. Maritime Autowash assured Mister Car Wash that Maritime Autowash would remain responsible and liable for any defense and damages related to the EEOC matters.

5. During the due diligence process, Maritime Autowash disclosed that it had received charges of discrimination filed by the Claimants, among others. Based on Maritime Autowash's continued assurances, records reflecting that all of the charging parties (including the Claimants) had long since left employment with Maritime Autowash, and Maritime Autowash's failure to disclose its ongoing battles with the EEOC, Mister Car Wash did not negotiate for a lower purchase price.

6. There is not and never has been any common ownership between Maritime Autowash and Mister Car Wash. The APA was a result of arms-length negotiations between separate, private companies that have no mutual stock ownership or control.

7. On or about January 21, 2015, at the closing of the acquisition ("Closing", Mister Car Wash paid the Seller, including Maritime Autowash, the full purchase price – in excess of $15 million – plus closing prorations, for a total amount that represented the largest amount Mister Car Wash had ever paid for two stores in the history of the company.

8. Based on Maritime Autowash's assurances that the Charges were meritless, the fact that none of the Claimants' or other Charging Parties' names appeared on the employee census provided during due diligence, the assertion that Maritime Autowash had a $1,000,000 insurance policy available to cover any liability for the Charges, and the express provisions of the APA, including representations, warranties and indemnifications by Maritime Autowash confirming that Mister Car Wash had no liability for any Charges (collectively or individually), Mister Car Wash was not aware of or involved in the EEOC's continued investigation into employment actions prior to the Closing by Maritime Autowash.

9. It was not until *several months after* the Closing that Mister Car Wash became aware of the ongoing status of the Charges when it began to receive direct communications from the EEOC.

10. It was also not until *several months after* the Closing that Mister Car Wash became aware of the specific allegations of the Charges, when it received the Charges from the EEOC. Mister Car Wash did not receive the actual Charges from Maritime Autowash at any time, including during the due diligence process.

11. By letter dated March 4, 2015, the EEOC informed Mister Car Wash of potential successor liability for alleged discrimination committed by Maritime Autowash." This is the first Mister Car Wash was made aware of its potential liability.

12. The EEOC issued Mister Car Wash a written request for information dated March 23, 2015 ("RFI"), which letter Mister Car Wash did not receive until on or about May 19, 2015.

13. On May 11, 2015, without having received any information from Mister Car Wash, EEOC amended the Charges for some, but not all, of the Charging Parties, naming Mister Car Wash as a respondent ("Amended Charges").

3

14. Mister Car Wash received the Amended Charges in or about June 2015. This was the first time Mister Car Wash was made aware of the specific underlying facts of the Charges.

15. Mister Car Wash cooperated with the EEOC, providing full responses to each of the March 2015 Requests for Information.

16. In accordance with the indemnification provisions of the APA, legal counsel for Maritime Autowash filed, on behalf of Mister Car Wash (but without Mister Car Wash's prior review), position statements in response to the Amended Charges. The facts asserted by Maritime Autowash's legal counsel in defense of the alleged discrimination were based solely on information provided by Maritime Autowash, essentially a restatement of the position statements the same legal counsel had filed in 2014 on behalf of Maritime Autowash in response to the original Charges. Maritime Autowash's legal counsel properly asserted that "[s]ince Mister Car Wash only purchased Maritime[ Autowash]'s assets, it is not liable for any of Maritime[ Autowash]'s alleged liabilities."

17. Mister Car Wash continued to rely on Maritime Autowash to resolve the Charges and provide it with a defense and was not party to the ongoing subpoena-enforcement action during 2015-2016 brought by EEOC against Maritime Autowash. Any responses filed on behalf of Mister Car Wash by Maritime Autowash's legal counsel were not provided to Mister Car Wash prior to their filing.

18. On March 22, 2017, EEOC issued to Maritime Autowash and Mister Car Wash a Letter of Determination finding reasonable cause to believe that Maritime Autowash violated Title VII and that Mister Car Wash is a successor in interest for Title VII purposes.

19. Attached hereto as Exhibit A is a true and correct copy of the Asset Purchase Agreement, excluding the exhibits and schedules except for Schedule 1.3, by and among CWP

West Corp., Maritime Autowash, Inc., Podrog Maritime Investments, LLC, Maritime Autowash II, Inc., Podrog Maritime Investments II, LLC, and David Podrog. As noted in the document, references to the purchase price have been redacted to protect this confidential and proprietary business information.

20. Attached hereto as Exhibit B are true and correct copies of the Charges of Discrimination dated March-April 2014.

21. Attached hereto as Exhibit C is a true and correct copy of the EEOC's March 4, 2015, letter to Mister Car Wash's CEO, John Lai.

22. Attached hereto as Exhibit D is a true and correct copy of the EEOC's March 23, 2015, request for information.

23. Attached hereto as Exhibit E are true and correct copies of the Amended Charges of Discrimination dated May-June 2015.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 27, 2017.

_____
Lawrence J. Minich