# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

   Plaintiff

v.                                        CIVIL NO. JKB-17-2463

PHASE 2 INVESTMENTS INC., *et al.*,

   Defendants.

## MEMORANDUM

The Equal Employment Opportunity Commission ("EEOC") brought this action against Defendants Phase 2 Investments Inc. ("Phase 2") and CWP West Corp t/a Mister Car Wash ("Mister") on August 28, 2017, alleging violations of Title VII. (*See* Compl., ECF No. 1.) The EEOC amended its complaint on September 27, 2017 (Am. Compl., ECF No. 5). After unsuccessful attempts to serve Phase 2, the EEOC successfully moved for alternative service on October 4, 2017. (*See* Order granting Mot. Alternative Service, ECF No. 11.) On October 11, the EEOC effected alternative service (ECF No. 14) and on October 27, Phase 2 moved to dismiss (ECF No. 15.) The EEOC then moved for attorney's fees and expenses pursuant to Federal Rule of Civil Procedure 4(d)(2). (*See* Mot. Att'y's Fees and Expenses, ECF No. 17.) Meanwhile, Mister had waived service on October 3, 2017, and moved to dismiss on November 27 (ECF No. 23). The EEOC responded to Mister's motion (*see* Opp'n Mot. Dismiss, ECF No. 25), and Mister replied (*see* Reply Mot. Dismiss, ECF No. 27). Mister's reply made several references to the substance of the EEOC's conciliation efforts in this case, and attached

documents as exhibits that reference conciliation or were created during conciliation. (*See, e.g.*, Reply Mot. Dismiss at 3; Conciliation Proposal, Ex. B to Minich Supp. Decl. 5-6, ECF No. 27-3; Rhodes Letter to Vander Woude, Ex. C to Minich Supp. Decl., ECF No. 27-4.) The EEOC then moved to strike these references under 42 U.S.C. § 2000e-5(b) which, *inter alia*, prohibits the use of things "said or done during and as part of [conciliation] as evidence in a subsequent proceeding without the written consent of the persons concerned." (*See* Mot. Strike, ECF No. 32.)

Phase 2 has responded to the EEOC's motion for attorney's fees and expenses (ECF No. 18), and the EEOC has replied (ECF No. 20). Mister has responded to the EEOC's motion to strike (ECF No. 35) and the EEOC has replied to that as well (ECF No. 36). Both of these motions are therefore ripe for review, and no hearing is necessary to resolve either matter. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, the Court will deny the EEOC's motion for attorney's fees and expenses and grant the EEOC's motion to strike.

**I.**     ***Background for EEOC's Motion for Attorney's Fees and Expenses***

The EEOC filed the instant lawsuit against Phase 2 and Mister on August 28, 2017. (*See* Compl.) That day, the EEOC also sent requests for waiver of service. (*See* ECF Nos. 2-3.) The EEOC sent a request for waiver of service to Mister's attorney Kevin Kraham, and Mister returned an executed waiver of service two days later. (*See* ECF No. 4.) The EEOC also sent a request for waiver of service to who it believed was Phase 2's attorney, John S. Vander Woude.

Mr. Vander Woude had previously represented a company named Maritime Autowash, Inc. ("Maritime Autowash"). (*See* Opp'n Mot. Att'y's Fees and Expenses 1, ECF No. 18.) Mr. Vander Woude had been contacted by Maritime Autowash's insurance carrier and asked to represent Maritime Autowash because a number of its employees had filed charges of

discrimination with the EEOC. (*Id.*) Mr. Vander Woude "continued to represent Maritime Autowash, Inc. with regard to those Charges of Discrimination through the conclusion of the unsuccessful conciliation process, which ended on or about June 14, 2017." (*Id.*) Prior to that date, Maritime Autowash had merged with Maritime Autowash, II and formed Phase 2 Investments, Inc., one of the Defendants in the instant action. (*See* Am. Compl. ¶ 8.) Hence, after working with Vander Woude on this case in his capacity as representative of Maritime Autowash for several years, the EEOC apparently believed that he was representing its current iteration, Phase 2. (*See* Mot. Att'y's Fees and Expenses at 1.)

This belief appeared to be confirmed on September 12, 2017, roughly two weeks after the EEOC had mailed Vander Woude a request for waiver of service. On that date, an article about this case appeared in the Capital Gazette which related a statement Mr. Vander Woude had apparently given, via email, to the reporter who authored the article on September 6: "In short, Maritime is now being sued by one agency of the Federal Government, the EEOC, for complying with the direct order of another agency of the federal government, the Department of Homeland Security (ICE)." (Phil Davis, *Attorney for Annapolis car wash denies discrimination against Hispanic workers*, Capital Gazette, Sept. 12, 2017, Reply Mot. Att'y's Fees and Expenses Ex. 1 at 3, ECF No. 20-1.) This statement, while referencing "Maritime" and not "Phase 2," would seem to suggest that Mr. Vander Woude was representing Phase 2, not to mention very much aware of the complaint that the EEOC had filed.

Mr. Vander Woude, however, claims that he was not representing Phase 2 at this time. (*See* Opp'n Mot Att'y's Fees and Expenses at 2.) In fact, "[a]t the time this lawsuit was filed," the insurance provider that first asked him to represent Maritime Autowash had "expressly advised" him that "he was not authorized to represent Phase 2 Investments, Inc. in the lawsuit, as

Phase 2 Investments, Inc. was not a named Insured in the Maritime insurance policy." (*Id.*) As Mr. Vander Woude was not authorized to represent Phase 2, he could not waive service of process for Phase 2, and therefore Mr. Vander Woude did not return the request for service of process that the EEOC had sent him on August 28, 2017.

Not only did Mr. Vander Woude not return the request for waiver of service, aside from apparently issuing a curious statement on behalf of "Maritime" to the Capital Gazette, Mr. Vander Woude did not do much of anything in regard to this lawsuit. He did not, for instance, inform the EEOC that it had sent a request for waiver of service to the wrong man. Nor did he inform the EEOC who *was* representing Phase 2. Nor did he, it seems, notify Phase 2 that it was being sued. Instead, on September 27, 2017, the day before the requested waiver was due, the EEOC notified *him* that it had not received its requested waiver. (*See* Opp'n Mot. Att'y's Fees and Expenses at 2.) After this slight nudge, Mr. Vander Woude finally informed the EEOC that he did not represent Phase 2, stating in an email, with a lawyer's eye for detail, "I don't *currently represent* Phase 2 or Phase II or any other Florida organization, and I have not been authorized to accept or waive service." (*See* Email from Vander Woude to Salacuse, Mot. Alternative Service Ex. 2, ECF No. 9-2) (emphasis added).) That would soon change.

Upon learning that Mr. Vander Woude did not represent Phase 2, the EEOC attempted to effect process on Phase 2's registered agent, a Mr. Podrog who lived in Florida, but the EEOC was ultimately unsuccessful. It therefore moved for alternative service, which this Court granted, and the EEOC then effected service on October 6, 2017, by means of, *inter alia*, serving process on the Florida Secretary of State, by email, and by sending a copy of the summons to Mr. Vander Woude. (*See* Executed Summons, ECF No. 14.) Fortuitously for Phase 2, on October 19, 2017 Maritime Autowash's insurance provider reversed course and authorized Mr.

4

Vander Woude to represent Phase 2. (Opp'n Mot. Att'y's Fees and Expenses at 3.) The EEOC moved for attorney's fees and costs associated with effecting service, pursuant to Federal Rule of Civil Procedure 4(d)(2). Mr. Vander Woude, who does now "currently represent" Phase 2, has filed an opposition.

II. *Background for EEOC's Motion to Strike*

Unlike the EEOC's motion for attorney's fees and costs, determining the merits of the EEOC's motion to strike portions of Mister's reply requires a brief discussion of the underlying complaint in this case. In 2013, nine employees of Maritime Autowash "submitted intake questionnaires to the EEOC indicating their desire to file charges of discrimination against" their employer. (Opp'n Mot. Dismiss 1-2, ECF No. 25.) Ultimately, in 2017, after several years of litigation (including a trip to the Fourth Circuit regarding the enforcement of a subpoena, *see EEOC v. Maritime Autowash, Inc.*, 820 F.3d 662 (2016)) the Director of the Baltimore EEOC field office, Rosemarie Rhodes, sent both Defendants a Letter of Determination, stating that she had determined there was reasonable cause that unlawful employment practices had occurred at the car wash (by now owned and operated by Mister). (*See* Letter of Determination, Ex. B to Minich Supp. Decl. 2-4, ECF No. 27-3.) This letter represented that there were fourteen charging parties and that they had been subject to unequal terms and conditions of employment "including working longer hours with shorter breaks, not having proper equipment, the assignment of additional duties and payment of lower wages because of their national origin (Hispanic), in violation of Title VII." (*Id.* at 1, ECF No. 27-3 at 2.) This letter also informed Defendants that the "Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation," and it included a Conciliation Proposal. (*Id.* at 3, ECF No.

27-3 at 4; *see* Conciliation Proposal.) The Conciliation Proposal essentially outlined the terms of a settlement offer.

After "engag[ing] in communications with Maritime Autowash and Mister Car Wash," for several months, the EEOC determined that conciliation had failed, and issued a notice to the Defendants stating as much on June 14, 2017. (*See* Opp'n Mot. Dismiss at 8.) The EEOC then filed the instant action in August 2017, as detailed above.

Mister brought a motion to dismiss on November 27, 2017. In the memorandum attached to that motion, Mister raised a number of arguments, but only two are relevant here. First, Mister argued that this Court lacks jurisdiction over the EEOC's claims as to Mister because the Charging Parties did not exhaust their administrative remedies. (Mot. Dismiss Mem. Supp. 18, ECF No. 23-1.) More specifically, Mister argued that the Charging Parties themselves did not raise a certain claim (i.e. race discrimination) or address certain practices (e.g. lack of access to filtered drinking water) with the EEOC and that members of the purported class who are not the Charging Parties did not raise any claims with the EEOC at all. (*See id.* at 18-19.)

The second relevant argument that Mister raised in its motion to dismiss is that the EEOC has not "shown that Maritime Autowash cannot provide relief." (*Id.* at 29.) Briefly, Mister argued in its motion that it is not liable for Maritime's alleged misdeeds under a theory of successor liability. (*Id.* at 26.) According to Mister, when determining whether successor liability is proper, courts "generally consider[] . . . whether the predecessor company has the ability to provide relief for the acts that occurred prior to the asset sale." (*Id.* at 29.) Mister contended that the EEOC did not adequately show that Maritime Autowash, the predecessor company, does not have the ability to pay. (*See id.* at 28-31.)

6

The EEOC responded to Mister's motion to dismiss in full, including these particular arguments. (*See* Opp'n Mot. Dismiss at 20-22, 32-38.) Mister replied, and included certain references to conciliation in its reply, as well as attached certain documents related to conciliation. More specifically, Mister attached the Conciliation Proposal described above, as well as a letter from Ms. Rhodes to Mr. Vander Woude sent on April 5, 2017 that in part references the Conciliation Proposal. (*See* Rhodes Letter to Vander Woude.)

As will be discussed in more detail below, Title VII prohibits the disclosure of statements made during conciliation unless all parties agree to their release. *See* 42 U.S.C. § 2000e-5(b). The EEOC therefore contacted Mister and requested that Mister remove its reply from the record and refile a reply without certain portions. (*See* Mot. Strike Mem. Supp. at 2.) According to the EEOC the parties then "engaged in a substantive meet and confer, but were unfortunately unable to resolve their differences." (*Id.*) According to Mister this "substantive meet and confer" consisted of "two short emails and . . . one brief telephone conversation in the span of some four hours." (Opp'n Mot. Strike at 5.) Mister offered to file the portions highlighted by the EEOC under seal, but that solution was rejected by the EEOC. (*See id.* at 4; Mot. Strike Mem. Supp. at 2 n.2.) Unable to resolve their differences, the EEOC filed a motion to strike portions of Mister's reply.

### III. *Motion for Attorney's Fees and Expenses under Federal Rule of Civil Procedure 4(d)(2)*

Under Federal Rule of Civil Procedure 4(d), a corporation subject to service under Rule 4(e) "has a duty to avoid unnecessary expenses of serving a summons." To facilitate that duty, a plaintiff may "notify such a defendant that an action has been commenced and request that the defendant waive service of a summons." Fed. R. Civ. P. 4(d)(1). To further push defendants along in avoiding unnecessary expense, "Rule 4(d) uses the carrot as well as the stick." 4A

7

Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1092.1 (4th ed.). If a defendant agrees to waive service it has more time to respond the complaint, *see* Fed. R. Civ. P. 4(d)(3), but if a defendant does not agree to waive service it must pay the aforementioned "unnecessary expense" of the plaintiff's efforts to effect service, unless the defendant can show "good cause" for failure to waive, *see* Fed. R. Civ. P. 4(d)(2).

Rule 4's operation is rather straightforward, and does not require much "factual inquiry." *See Spivey v. Bd. of Church Extension and Home Mission of Church of God*, 160 F.R.D. 660, 663 (M.D. Fla. 1995). If a corporation is subject to service under Rule 4(e), i.e. is subject to service in a judicial district in the United States, then that corporation may be asked by a plaintiff to waive service. Fed. R. Civ. P. 4(d)(1). If the plaintiff does request that such a corporation waive service, she must send that request to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(d)(1)(A)(ii). If such a person receives a request for waiver and does not waive service, the court "must impose" on the defendant the costs that plaintiff had to then expend in effecting service, unless the defendant had "good cause" not to waive. Fed. R. Civ. P. 4(d)(2). Determining "good cause" requires *some* "factual inquiry," but there is at least one simple boundary: a person has "good cause" to not waive service of process for a defendant if she is not authorized to waive service of process for that defendant. *See Capitol Hardware Mfg. Co., Inc. v. NATCO, Inc.*, 707 F. Supp. 374, 376 (N.D. Ill. 1989) (holding that "a party demonstrates good cause for not having costs of service assessed against it under rule 4(c)(2)(D) [now Fed. R. Civ. P. 4(d)(2)] when the attempted service would have proved ineffectual.").

There is little doubt in the Court's mind that Phase 2's counsel violated the spirit if not the letter of Rule 4(d). The goal of Rule 4(d) "is simple: to 'eliminate the costs of service of a

summons on many parties and to foster cooperation among adversaries and counsel.'" 4A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1092.1 (4th ed.) (quoting Fed. R. Civ. P. 4(d) advisory committee's note). This Mr. Vander Woude certainly did not do. Nor did he ably assist Phase 2 in the performance of its duty, imposed under Rule 4(d)(1), to "avoid unnecessary expenses of serving the summons." Mr. Vander Woude's argument in opposition to the EEOC's motion is long on technicality but regrettably short on collegiality. He does not dispute (nor even mention) that he received the EEOC's request for waiver of service, likely sometime shortly after it was sent on August 28, 2017 (Mister was able to return its wavier by August 30). Yet he also does not explain why he did not inform the EEOC that he was not the proper person to receive this document. In fact, he does not appear to inform the EEOC who such a proper person would be even when the EEOC contacted him on September 27 and directly asked him why he had not returned the wavier of service. Nor does he make any attempt to explain curious statements he apparently made to a reporter that seem to demonstrate his knowledge of this lawsuit, weeks before the EEOC contacted him to follow up on their request for service. The Court is sadly aware that such behavior is a matter of practice for some attorneys, but it falls short of what is expected in this District.[1]

Still, the Defendant's argument, technical as it may be,[2] rests on facts that are not controverted in the record, even if they are viewed skeptically by the EEOC. According to Mr.

---

[1] It does not appear, however, to be in violation of any professional rules, as the EEOC contends. (*See* Reply Mot. Att'y's Fees and Expenses 3, ECF No. 20.) The EEOC asserts that Mr. Vander Woude had a duty to forward notices to Phase 2 under Maryland Rule 1-324, which states that an "attorney promptly shall forward *to the client* all such notifications, including any received after termination of the limited appearance." (emphasis added). Yet again, Mr. Vander Woude appears to have complied with the letter of the law here, and was under no legal obligation (that has been brought to the attention of this court) to forward notice of a lawsuit to an entity that, although clearly related to his former client, had never actually engaged his representation.

[2] Plaintiff writes that "Rule 4(d) has been 'liberally construed by the courts and, as interpreted, does not require rigid formalism.'" (Reply Mot. Att'y's Fees and Expenses at 1 (quoting *Ins. Co. of N. Am. v. S/S Hellenic Challenger*, 88 F.R.D. 545, 547 (S.D.N.Y. 1980).) But the case Plaintiff quotes discusses an older version of Rule 4(d) – what is now Rule 4(h), which outlines how to serve process on a corporation. Plaintiff would be correct to assert that rules

9

Vander Woude, he was not authorized to represent Phase 2 when the EEOC sent him notice of this lawsuit and request for service of process. If he was not so authorized then the EEOC, no matter how well-meaning its attempt was, did not send a notice and request to an "agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(d)(1)(A)(ii).[3] The EEOC did not perform this crucial step, and therefore the Court will not award costs under Rule 4(d)(2).

Much like Mr. Vander Woude's behavior in this case, Phase 2's registered agent, David Podrog, also appears to have been unnecessarily difficult without triggering the cost shifting mechanism of Rule 4(d)(2). According to the EEOC, after Mr. Vander Woude finally informed it that he was not representing Phase 2, the EEOC "attempted to serve Phase 2 directly," but did not mail Mr. Podrog a request for waiver of service. (*See* Mot. Att'y's Fees and Expenses at 2.) The EEOC may be correct that "Podrog cannot in good faith assert that he was unaware of the lawsuit" (Mot. Att'y's Fees and Expenses at 3), but awareness of the lawsuit is not what Rule 4(d)(2) requires. Rather, "[i]f a defendant located within the United States fails, without good cause, *to sign and return a waiver requested by a plaintiff* located within the United States, the court must impose [costs] on the defendant." Fed. R. Civ. P. 4(d)(2). The EEOC did not send Mr. Podrog a request for waiver of service that Mr. Podrog subsequently failed to sign and

---

for serving process on a corporation are liberally construed, and that Rule 4(h) may permit service to be made not just on a "class of formally titled officials, but . . . upon a representative so integrated with the organization that he will know what to do with the papers." *Ins. Co. of N. Am.*, 88 F.R.D. at 547 (internal quotation marks omitted). But, as discussed below, the Plaintiff does not present evidence directly controverting Mr. Vander Woude's contention that he had been expressly told that he was not authorized to represent Phase 2.

[3] The EEOC notes that the attorney-client relationship can be implied, and courts have found that such a relationship existed based on the actions of both attorney and client. (*See* Reply Mot. Att'y's Fees and Expenses at 5.) But, as the case the EEOC cites states, authority to accept service is a step beyond an implied attorney-client relationship. (*Id.* (citing *Broadnax v. Dep't of Veteran Affairs Washington Mut. Bank*, No. Civ.A. 2:04CV693, 2005 WL 1185809, at *5 (E.D. Va. May 19, 2005).) The EEOC essentially argues that Mr. Vander Woude's statement to the Capital Gazette provides that additional step and creates an implied authority to accept service of process. (*Id.*) Although the Court is troubled by Mr. Vander Woude's conduct in general and this apparent statement to the press in particular, it does not find this single statement enough to reach the very serious conclusion that Mr. Vander Woude was not truthful with the Court when he wrote that he was not authorized to represent Phase 2 when the EEOC requested waiver of service.

return.  His seemingly dilatory and dodgy behavior cannot be the grounds for awarding costs under Rule 4(d)(2).

In short, neither Phase 2 nor its counsel appear to have adhered to the standards of collegiality and professionalism that are typical of colleagues and professionals in this District, but neither appear to have violated the letter of Rule 4(d)(2) and thus the Court will deny the EEOC's motion for attorney's fees and expenses associated with effecting service.

**IV.** *Motion to Strike Material Related to Conciliation under 42 U.S.C. § 2000e-5(b)*

"[B]efore the EEOC may file suit alleging unlawful discrimination on the part of an employer, Title VII requires that the EEOC 'endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion.'" *EEOC v. Dimensions Healthcare Sys.*, 188 F. Supp. 3d 517, 520 (D. Md. 2016) (quoting 42 U.S.C. § 2000e-5(b)).  There is no requirement that the parties reach any sort of resolution through this conciliation process, or that the EEOC make any particular settlement offer, but the EEOC must at least attempt informal resolution before bringing a claim in federal court.  *See Mach Mining, LLC v. E.E.O.C.*, 135 S. Ct. 1645, 1652 (2015). This provision of Title VII evinces a Congressional desire that employment discrimination claims be resolved, whenever possible, "through cooperation and voluntary compliance." *Dimensions Healthcare Sys.*, 188 F. Supp. 3d at 520 (quoting *Ford Motor Co. v. EEOC*, 458 U.S. 219, 228 (1982) (alterations and quotation marks omitted)).

To facilitate this cooperation and compliance through informal means, Congress created a cone of silence around the conciliation process. *See Mach Mining*, 135 S. Ct. at 1649.  "Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without

the written consent of the persons concerned." 42 U.S.C. § 2000e-5(b). Much like rules that prohibit the use in trial of statements made in negotiations or settlement offers, *see* Fed. R. Evid. 408; Fed. R. Civ. P. 68(b), the prohibition on the use of statements made during informal conciliation efforts helps "ensure candor in those discussions," *Mach Mining*, 135 S. Ct. at 1649. It is important to note that this veil of confidentiality encourages candor not just between the EEOC and the defendant, but among the aggrieved employees as well. *See id.* at 1655 n.2. "The *employer*'s decision to contest the EEOC's conciliation efforts cannot waive . . . the *employee*'s statutory rights." *Id.* (emphasis in the original).

So, the EEOC *must* make an effort at conciliation as a prerequisite to bringing a claim in court, but "[n]othing said or done during and as part of" conciliation can be made public (without consent). These two realities of the EEOC conciliation process create a tension. How can a court determine that the EEOC engaged in conciliation if it cannot review the conciliation process? This question was resolved by *Mach Mining, LLC v. E.E.O.C.*, a case cited heavily by both parties here, which ultimately found that the conciliation process was subject to limited judicial review. *See* 135 S. Ct. at 1652 ("Congress has not left *everything* to the Commission." (emphasis in the original)). Title VII requires that "the EEOC . . . afford the employer a chance to discuss and rectify a specified discriminatory practice." *Id.* at 1653. "[T]o meet the statutory condition, [the EEOC] must tell the employer about the claim—essentially, what practice has harmed which person or class—and must provide the employer with an opportunity to discuss the matter in an effort to achieve voluntary compliance." *Id.* at 1652. A court should review just enough to enforce this statutory standard. *See id.* at 1653. This means a court should do more than "accept the EEOC's say-so" that it has engaged in conciliation (assuming that its say-so is contested), but need not delve into the particulars of what exactly occurred during the

12

conciliation process. *Id.* at 1653-54. The EEOC has, by Congressional design, tremendous flexibility in deciding *how* to engage in conciliation, and it is not the job of a court to Monday-morning quarterback the EEOC's resolution efforts. *See id*. at 1654. Thus, its review of conciliation communications is "extremely narrow." *EEOC v. Dolgencorp, LLC*, 249 F. Supp. 3d 890, 896 (N.D. Ill. 2017).

The court's job when it comes to reviewing conciliation materials is much like that of a parent assessing whether their teenage child can go to a movie with her friends. The parent can view the movie poster, and thus learn some basic facts – genre, rating, the leading actors – but it would undermine the informal nature of the exercise to actually attend the screening. A court can view the "movie poster" materials which outline the basic charges and invite the defendant to engage in conciliation, *see Mach Mining* 135 S. Ct. at 1655-56 (discussing "letter announcing [the EEOC's] determination of 'reasonable cause'"), but it cannot see the movie; it cannot review whatever letters, emails, phone calls, or meeting notes that may have been produced during conciliation. The court, like the parent, needs enough to determine the basic substance of the enterprise and its appropriateness, nothing more.[4]

The Letter of Determination here is "movie poster" material but the "conciliation proposal," also referred to by the parties as a "conciliation demand," is for theatergoers only. Although sent and received at the same time as the Letter of Determination, the proposal exists

---

[4] To be clear, a court can look to more than just the Letter of Determination. In *Mach Mining*, the Court expressly rejected a "bookend" approach to review, that would limit the District Court to review of the Letter of Determination and a letter informing the defendant that conciliation had failed. 135 S. Ct. at 1653. To push the movie analogy to perhaps its breaking point, the parent can do more than simply see the movie poster. He can view the poster to determine substance and appropriateness, *and* can pause at the Cineplex to make sure his daughter and her friends enter the correct theater, and can return to collect them at the appropriate time. He should not enter the actual theater or watch the show; to do so would be to intrude inappropriately. The Court can look beyond the letter of determination as to whether the conciliation efforts were actually made but still refrain from engaging with the substance of the particular communications. *See id.* at 1656 ("[A] court looks only to whether the EEOC attempted to confer about a charge, and not to what happened (*i.e.,* statements made or positions taken) during those discussions.").

in an importantly, if only theoretically, different temporal space than the Letter of Determination: the proposal *was* "during" conciliation when the Letter of Determination was not. This proposal was part of, in fact was the beginning of, a process of informal resolution – it was the opening salvo in an attempt to settle this dispute before reaching the courthouse. Because it occurred "during and as part of" conciliation its publication in the record in this case is barred by Title VII. References to what was written in the conciliation proposal or the substance of what was said or done during conciliation are similarly off limits.

References to what was *not* written in the conciliation proposal or *not* said during conciliation are off limits as well. Title VII's prohibition on publishing material produced during conciliation necessarily encompasses statements about what was not said during conciliation. That is, this prohibition is a shield and not a sword. Were the Court to allow the Defendant here to state, for instance, that "the EEOC never identified race as a potential basis of discrimination . . . in conciliation" (Reply Mot. Dismiss at 3), the EEOC would be placed in the uncomfortable position of having to rebut that assertion by means of publishing material in violation of Title VII. Thus, statements asserting the absence of material from "the Charges," the EEOC's "investigation," or the Letter of Determination are acceptable; statements asserting the absence of material from "conciliation" (including the "conciliation proposal" and "conciliation notice") are not.

For these reasons the Court will grant the EEOC's motion, strike Mister's reply and exhibits, and Mister will be ordered to refile a reply within seven days without the conciliation proposal, references to the substance of the conciliation proposal, or anything else said or done during conciliation.

Mister makes three arguments for why the EEOC's motion to strike should not be granted, but all three miss the mark. First, Mister contends that the EEOC did not exhaust conferral efforts before seeking judicial intervention. Mister correctly notes that, as a matter of good practice, attorneys should attempt to resolve all non-dispositive issues through informal means and without engaging the time and resources of the Court, but this argument is misplaced here. It appears that the parties *did* attempt an informal resolution before the EEOC filed this motion, even if (and this seems to be a theme) Mister took issue with the substance of those informal discussions. It appears that the EEOC asked Mister to remove these documents and statements from its reply; that Mister refused but offered a compromise of filing the material at issue under seal; and that the EEOC did not agree with that solution. This would appear to be an attempt at informal resolution, and furthermore the Court agrees with the EEOC: filing this material under seal would not alleviate the problem created by 42 U.S.C. § 2000e-5(b). Whether or not *the public* can view this material is not a dispositive issue. Only when all of the parties *to the conciliation* – the EEOC, Mister, and the Charging Parties – agree can the material be published. Furthermore, while the Court certainly agrees with Mister that attorneys, as a matter of practice, should attempt to resolve non-dispositive issues through informal means, the Court is guided here by the statutory prohibition, not by its own discretion as to the professionalism of counsel. Even if the EEOC had acted discourteously toward Mister (and the Court does not so find), that would not alter the fundamental calculus – this material was part of conciliation and the parties to conciliation do not consent to its disclosure. Under that calculus the material cannot be disclosed.

Mister's second argument fails for similar reasons. Mister contends that the EEOC failed to meet the standards for striking material under Federal Rule of Civil Procedure 12(f). But

again, the Court is guided by 42 U.S.C. § 2000e-5(b), not Rule 12(f). It is not the EEOC's burden here to demonstrate that the material is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). Rather, it must simply withhold consent from the publication of this material, and if the Court finds that the material is protected by 42 U.S.C. § 2000e-5(b), it must be stricken. *See Dimensions Healthcare Sys.*, 188 F. Supp. 3d at 522 (granting the EEOC's motion to strike portions of "briefing and [an] affidavit which reveal some of what was said or done during the conciliation process," but not discussing Rule 12(f) (internal quotation marks omitted)).

Finally, Mister argues that *Mach Mining* "does not bar evidence of the EEOC's total failure to conciliate its race discrimination claim or alleged wage-based compensatory damages." (Opp'n Mot. Strike at 2.) Defendant's argument is only half right and seemingly misplaced. *Mach Mining* does not bar *all* evidence of the EEOC's alleged "total failure to conciliate." Under *Mach Mining*, once a defendant has raised the argument that the EEOC failed to conciliate, a court "must conduct the factfinding *necessary to decide that limited dispute*." *Mach Mining*, 135 S. Ct. 1656 (emphasis added). Not all potential evidence is necessary for that decision, and 42 U.S.C. § 2000e-5(b) certainly bars *some* evidence that would otherwise support an argument that the EEOC "total[ly] fail[ed] to conciliate." (Opp'n Mot. Strike at 2); *see Mach Mining*, 135 S. Ct. at 1655 (noting that the district court below had failed to "strike from the record descriptions of the conciliation process" and in doing so "failed to give effect to the law's non-disclosure provision"). So, even if Mister brought a failure to conciliate defense, that would not open the door to the introduction of all things said or done during conciliation.

Furthermore, this argument seems to be misplaced, because it appears that Defendant did not raise a failure to conciliate defense. Determination of this motion has been infused with

16

much unnecessary confusion because of the nature of Mister's defense with regard to conciliation. Mister did not argue in its motion to dismiss that the EEOC failed to conciliate. In fact, Mister's motion to dismiss did not use the words "conciliate" or "conciliation." Rather, Mister argued in its motion that the EEOC has failed to exhaust claims because the Charging Parties failed to raise certain claims, or address certain practices, and that members of a purported class of aggrieved employees raised no claim with the EEOC at all. Then, in Mister's reply it appeared to argue for the first time that the EEOC failed to conciliate. (*See* Reply Mot. Dismiss at 7 n.14 ("If the EEOC does in fact seek back pay on a broader set of claims, including class claims and race-based claims, it again has failed to engage in conciliation with respect to those claims, foreclosing recovery in the current litigation.") Luckily, as concerns this motion to strike, the difference between these two arguments is unimportant. The bottom line is that the substance of what was said or done during conciliation is irrelevant. It is irrelevant in considering whether the Charging Parties raised certain claims with the EEOC, it is irrelevant in considering whether the EEOC included certain claims in its Charges of Discrimination, and it is irrelevant in considering whether the EEOC failed to conciliate.[5]

By Congressional design, the EEOC is given a wide berth in determining how best to resolve these disputes. *See Mach Mining*, 135 S. Ct. at 1654-55. If there is no discussion of "race discrimination" in the Conciliation Proposal, or no discussion of certain practices related to drinking water, that could be because the EEOC had not been told of such practices by the

---

[5] If Mister's argument is that certain claims were not raised by the Charting Parties, or in the Charging documents, or in the Letter of Determination, the Court will look to the Charging Parties' complaints, the Charging documents, and the Letter of Determination to assess that argument. If Mister's argument is that certain claims were not conciliated, the Court will look to the Charging Parties' complaints, the Charging documents, and (especially) the Letter of Determination. The only difference would be that in the second instance the Court will *also* look to whether the EEOC engaged in efforts to conciliate – whether, for instance, a conciliation proposal was sent, whether phone calls were made, emails exchanged, and so forth. It will not, and need not, look to the substance of that conciliation proposal, what was said during those phone calls, or what was written in those emails. That material has no bearing on whether a defendant was put on notice of certain claims and whether an attempt at conciliation was made.

charging parties, as Mister asserts. Similarly, the EEOC could have left out a demand for backpay from its Conciliation Proposal because it did not believe it had a case for demanding backpay. *Or* these omissions could be due to the EEOC's strategic intention to leave out such terms from its opening settlement offer in an effort to entice Mister into a swift resolution of this dispute. Or these claims, practices, parties, and damages were omitted from the Conciliation Proposal for reasons beyond the Court's ken, as it is the EEOC, and not this Court, that Congress believes is the expert body designed to informally resolve these disputes. *See id.* at 1654 ("Congress left to the EEOC such strategic decisions as whether to make a bare-minimum offer, to lay all its cards on the table, or to respond to each of an employer's counter-offers, however far afield.").

**V.     *Conclusion***

Phase 2 and its counsel did not violate the letter of Federal Rule of Civil Procedure 4(d)(2) and therefore the EEOC's motion for attorney's fees and costs will be denied by accompanying order. Mister's reply in support of its motion to dismiss contained references to things said or done during conciliation, in violation of 42 U.S.C. § 2000e-5(b), and therefore the EEOC's motion to strike will be granted by accompanying order. Mister is ordered to refile its reply without the offending material in accordance with the accompanying order.

DATED this 12th day of February, 2018.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge