**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | * | |
| | * | |
| **Plaintiff** | * | |
| **v.** | * | **CIVIL NO.  JKB-17-2463** |
| | * | |
| **PHASE 2 INVESTMENTS INC.,** *et al.*, | * | |
| | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| **CWP WEST CORP.,** | * | |
| **Cross-claimant** | * | |
| **v.** | * | **CIVIL NO.  JKB-17-2463** |
| **PHASE 2 INVESTMENTS INC.,** | * | |
| **Cross Defendant.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| **CWP WEST CORP.,** | * | |
| **Third-Party Plaintiff** | * | |
| **v.** | * | **CIVIL NO.  JKB-17-2463** |
| **DAVID PODROG** | * | |
| **Third-Party Defendant.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

# MEMORANDUM

In this employment discrimination case, the Equal Employment Opportunity Commission ("EEOC") brought claims against co-Defendants Phase 2 Investments, Inc. ("Phase 2") and CWP West Corp. d/b/a/ Mister Carwash ("Mister") alleging violations of Title VII of the Civil Rights Act of 1964 in regard to the operation of a carwash previously owned by corporations that merged into Phase 2 (as well as other entities), and is now owned by Mister.  Mister filed a cross-claim against Phase 2 and a third party claim against David Podrog, Director of Phase 2 and previous owner of the carwash, on May 14, 2018, asserting various claims related to Mister's purchase of the carwash.  (*See* Cross-claim, ECF No. 50 pp. 20-41; Third Party Compl., ECF No. 51.)  Phase 2 and Mr. Podrog (collectively, "the Sellers") have filed separate motions to dismiss (ECF Nos. 57 and 66, respectively) that present largely the same arguments.  These motions were fully briefed.  (*See* ECF Nos. 67, 68, 71, 73).  The Court then ordered supplemental briefing (*see* Order for Supplemental Briefing, ECF No. 74) and the Sellers and Mister have filed their supplemental briefs (*see* ECF Nos. 75 and 76, respectively).  The Sellers' motions to dismiss are therefore ripe for review.  There is no need to hold a hearing to resolve either motion. *See* Local Rule 105.6 (D. Md. 2016).  For the reasons stated below, the Court will, by accompanying order, grant in part and deny in part the Sellers' motions to dismiss.

# I.    *Background*[1]

In 2013, the EEOC began investigating unlawful employment practices at the Sellers' carwashes in Maryland.  (Cross-claim, ¶ 23.)  In early 2014, the EEOC issued fourteen charges of discrimination on behalf of employees that the Sellers terminated.  (*Id.* ¶ 24.)  The Sellers responded to these charges of discrimination.  (*Id.* ¶ 25.)

Meanwhile, beginning in June 2014, Mr. Podrog approached Mister about selling the carwashes.  (Cross-claim ¶ 27.)  Throughout their discussions, the Sellers did not fully disclose their knowledge of the EEOC investigation, including "certain details regarding the EEOC investigation and the EEOC Charges."  (*Id.* ¶¶ 29-31.)

In January 2015, Mister and the Sellers entered into an Asset Purchase Agreement ("APA") for the sale of the carwashes.  (Cross-claim ¶ 34; *see* APA, ECF No. 23-5.)  In the APA, the Sellers agreed to indemnify Mister for a range of "Losses."  (*See* APA § 8.2.) "Losses" were defined very broadly in the APA.  (*See id.* § 8.2(a).) They included: "damages, liabilities, losses, taxes, fines, penalties, costs, and expenses . . . of any kind or nature whatsoever."  (*Id.*)  The Sellers agreed to indemnify Mister for "Losses" "which may be sustained or suffered by any of [the buyers] arising out of or based upon . . . fraud . . . intentional misrepresentation [or] any other breach of any agreement, representation, warranty or covenant of Seller under this Agreement."  (*Id.*)  In short, the Sellers, in the APA, agreed to compensate

---

[1] This memorandum is in part reviewing a motion to dismiss Mister's cross-claim and third party complaint under Rule 12(b)(6) and the Court will therefore take as true the allegations in Plaintiff's complaint that concern the Sellers' arguments under Rule 12(b)(6).  *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  The Sellers have also asked that the Court abstain, which is akin to a motion asserting lack of subject matter jurisdiction under Rule 12(b)(1), *see* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed.), and, in the case of a factual challenge to subject matter jurisdiction, it is permissible for a district court to "consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Richmond, Fredericksburg, and Potomac R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991).  Thus, the facts herein that are relevant to the Courts consideration of abstention are taken from the record as a whole.

Mister for money it lost because of any breaches by the Sellers of the APA, as well as any money it lost because of the Sellers' "fraud [or] intentional misrepresentation," regarding the APA.

The Sellers also agreed in the APA to provide Mister with a defense against certain claims under certain circumstances. Of importance to this case, the Sellers agreed that "if the named parties to [an] action or proceeding include[d] both [Mister] and [the Sellers], and [Mister] [was] advised that representation of both parties by the same counsel would be inappropriate under applicable standards of professional conduct, [Mister] may engage separate counsel at the expense of the [the Sellers]." (APA. § 8.4.)

Finally, the APA limited Mr. Podrog's individual liability. In Section 8.2(d) of the APA, Mr. Podrog's personal liability to indemnify Mister was limited to two million dollars, and was set to expire two years from the Closing Date, *i.e.*, January 21, 2017. Section 8.2(d) concludes: "Except for authority of Seller as provided in Section 2.2 and for fraud, any claim noted after that date against Podrog individually shall be null and void under any and all circumstances."

Between March and June 2015, the EEOC amended the charges in its investigation to name Mister as a co-defendant, asserting that Mister was liable for the practices at the carwash under a theory of successor liability. (Cross-claim ¶ 35-36.) On July 16, 2015 (six months after Mister and the Sellers signed the APA) Mister noted four separate claims against the Sellers (the "Claim Notices"). (*See* Claim Notices, ECF No. 50-1.) Claim No. 3 concerned the Sellers' representations and warranties surroundings their compliance with federal and state labor and employment laws and the nature of the EEOC action. (*Id.* pp. 1-2, ECF No. 50-1 at 7-8.) Specifically, Claim No. 3 sought damages for "Losses" arising out of breaches of those representations and warranties in Sections 2.8(b) and 2.18 of the APA, sections in which the Sellers represented they were "in compliance with all applicable statutes . . . which apply to the

conduct of the Business," had "received no notice of any violation or alleged violation of any such statute" and were "in compliance with all applicable laws and regulations respecting [among other things] labor [and] employment." (*Id.* §§ 2.8(b) and 2.18).

On October 5, 2015, Mister and the Sellers settled these claims by entering into a "Settlement Agreement and Release" ("Release"). (Cross-claim ¶ 39; *see* Release, ECF No. 50-2.) In the Release, Mister "release[d] and forever discharge[d] the [Sellers]" from any claims that "did, do or may arise or derive from or are related to the Asset Purchase Agreement," *except* for two types of claims. (*Id.* at 6-7.) Mister did not "release and forever discharge" its own "respective rights and obligations arising under [the APA]." (*Id.* at 6.) And Mister did not "release and forever discharge" the Sellers from claims arising out of "the prior agreement by Sellers to indemnify [Mister] for Losses, if any, as defined in the [APA], that relate to Claim No. 3, described in the [Claim Notices]." (*Id.*)

So, to summarize, in the APA the Sellers agreed to pay for any losses Mister suffered as a result of *any* breach of the APA (by the Sellers), as well as any fraud, or intentional misrepresentation (by the Sellers); Mister noted claims against the Sellers asserting various breaches and misrepresentations; and Mister and the Sellers then settled those claims *except* that Mister could still seek indemnification from the Sellers for claims relating to Sections 2.8(b) and 2.18 of the APA, which deal with the Sellers' representations regarding the EEOC action and their compliance with labor and employment laws generally.

After the EEOC's attempts at conciliation failed, the EEOC filed suit against Phase 2 and Mister in this Court on August 28, 2017. Mister was named as a Defendant in the suit under a theory of successor liability, and "[j]oint representation of Cross-Claimant Mister and Defendant Phase 2 in the EEOC Action [was] inappropriate pursuant to the applicable standards of

professional conduct." (Cross-claim ¶ 55.)  Further, Mister alleges it "was advised by multiple lawyers that a claim conflict existed." (*Id.* ¶ 55 n.1.)  However, the Sellers have refused to pay for Mister's separate counsel in this matter.  (*See id.* ¶¶58-59.)

Phase 2 and Mister both filed motions to dismiss the EEOC complaint.  (*See* ECF Nos. 15 and 23, respectively).[2]  While those motions were pending, Mister filed suit against Phase 2 in Anne Arundel Circuit Court ("the State Court Action") on January 19, 2018.  (*See* State Court Action Compl., ECF No. 57-2.)  In the State Court Action, Mister sought indemnification from the Sellers and other entities, alleging that they breached the APA and intentionally misrepresented the status of the EEOC investigation in the APA.  Mister also brought a fraudulent conveyance claim against the Sellers under the Maryland Uniform Fraudulent Conveyance Act ("MUFCA"), Md. Code Ann., Commercial Law § 15-201 *et seq.*, alleging that Mr. Podrog fraudulently conveyed assets in order to shield them from Mister.  The Sellers moved to dismiss the State Court Action, and a hearing on those motions is set in for November 5, 2018.  (*See* Mister Supp. Brief 3 n.2, ECF No. 76; Sellers' Supp. Brief 2, ECF No. 75.)

On April 17, 2018 this Court denied Mister's and Phase 2's motions to dismiss (construing them as motions for summary judgment).  (*See* Order Denying Mots. Summ. J., ECF No. 46.)  Phase 2 and Mister answered the EEOC's amended complaint on May 1.  (*See* ECF Nos. 47 and 48 respectively).  Then, on May 14, Mister amended its answer to include a cross-claim against Phase 2, and filed a third party complaint against Mr. Podrog.  Mister's cross-claim and third party complaint are virtually identical to each other, and to Mister's earlier-filed

---

[2] Mr. Podrog was not named as a defendant in the underlying action.

complaint in the State Court Action.[3]  Mister chose to name several additional defendants in the State Court Action, all of whom are entities related to the Sellers.

The Sellers have now filed motions to dismiss the cross-claim/third party complaint (hereinafter, "the Cross-claim").  The Sellers contend that these claims were not properly brought under Federal Rule of Civil Procedure 13(g) (as against Phase 2), that the Court should abstain under *Colorado River Water Conservation District v. U.S.*, 424 U.S. 800 (1976), because Mister instituted identical claims against these parties in a state court, and that, even if the Court did not abstain, each claim fails for various independent reasons under Federal Rule of Civil Procedure 12(b)(6).  Mister explained in its briefing in opposition to the Sellers' motions that it had filed the State Court Action in January because the statute of limitations was running on these claims.  This explanation left the Court confused as to why Mister needed to file the claim in a state court, and did not file them in this Court.  Further, assuming Mister was correct about the statute of limitations and that it would have run by the end of January, the Court was confused as to why the identical claims it filed in May would not be time barred.  Thus, the Court ordered supplemental briefing on these topics, which the parties responded to on July 26, 2018.  The Court has fully considered this supplemental briefing, as well as all other briefing in relation to the Sellers' motions to dismiss the Cross-claim, and it will now turn to the disposition of those motions.

---

[3] For the most part, the only differences are those attendant to filing the same claims in different courts.  So, the bases of jurisdiction are different, the names for Mister are different (*e.g.*, it is a "Plaintiff" in the State Court Action, a "Third Party Plaintiff" in the third party claim), and the named defendants are different (*e.g.*, only Phase 2 is named as a defendant in the cross-claim, because only Phase 2 is a co-defendant, and only Mr. Podrog is named as a defendant in the third party complaint).

## II.     *Standards*

### a.  *Rule 13(g)*

Under Federal Rule of Civil Procedure 13(g), a defendant may bring a cross-claim against a co-defendant "if the claim arises out of the transaction or occurrence that is the subject matter of the original action."  "A cross-claim arises out of the same transaction or occurrence as the original claim if it bears a logical relationship to it."  *R.E. Linder Steel Erection Co., Inc. v. Aluminum Sys., Inc.*, 88 F.R.D. 629, 632 (D. Md. 1980) (internal quotation marks omitted). Further, such cross-claim "may include a claim that the coparty is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant."  Fed. R. Civ. P. 13(g).  Thus, claims by a defendant against a co-defendant seeking indemnity for losses resulting from the underlying action are generally authorized under Rule 13(g).  *See Day v. Robbins*, 179 F. Supp. 3d 538, 541 (D. Md. 2016).

### b.  **Colorado River** *abstention*

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813.  But, when there are parallel proceedings in state and federal court, a federal court may abstain under certain "exceptional circumstances."  *Id.*  This *Colorado River* abstention is "unrelated to considerations of proper constitutional adjudication and regard for federal-state relations," but rather "rest[s] on considerations of [w]ise judicial administration."  *Id.* at 817 (internal quotation marks omitted).  "Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."  *Id.* (internal quotation marks omitted).  Still, a "general principle" has evolved to "avoid duplicative litigation," *id.*,

even if "the balance [is] heavily weighted in favor of the exercise of jurisdiction," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

### c. *Rule 12(b)(6)*

Cross claims, third party complaints, and complaints are evaluated the same when challenged by a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Shelton v. U.S.*, PWG-14-2031, 2015 WL 4663713, at *2-*3 (D. Md. Aug. 5, 2015) (reviewing a cross-claim); *U.S. v. Azrael*, 774 F. Supp. 376, 377-78 (D. Md. 1991) (reviewing third party complaints). Under that familiar standard, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

## III. *Analysis*

The Court will first address Phase 2's argument that Mister's cross-claim is not permitted by the Federal Rules, and then turn to whether the Court should abstain from the exercise of its jurisdiction under *Colorado River*. Because the Court will decline to abstain under *Colorado*

*River*, the Court will finally address the Seller's arguments as to why Mister's claims should be dismissed under Rule 12(b)(6).

### a. *Rule 13(g)*

Phase 2 first argues that Mister's cross-claim should be dismissed because it is not permitted under Rule 13(g). Specifically, Phase 2 contends that Rule 13(g) only permits cross-claims that "arise[] out of the transaction or occurrence that is the subject matter of the original action," and that the "subject matter" of the original action in this case is an employment discrimination claim brought under Title VII. (Phase 2 Mot. Dismiss Mem. Supp. 6, ECF No. 57-1 (quoting Fed. R. Civ. P. 13(g).) But, Mister's cross-claim bears a clear "logical relationship" to the subject matter of the original complaint. *See R.E. Linder*, 88 F.R.D. at 632. Mister is seeking indemnity, *i.e.*, compensation for losses, stemming from the Sellers' alleged breaches of the APA and misrepresentations relating to this lawsuit brought by the EEOC. Thus, it is a permissible cross-claim under Rule 13(g).[4]

### b. Colorado River *Abstention*

"For a federal court to abstain under the *Colorado River* doctrine, two conditions must be satisfied." *Gannett Co., Inc. v. Clark Const. Grp., Inc.*, 286 F.3d 737, 741 (4th Cir. 2002). First the proceedings must be sufficiently similar so as to be considered "parallel." *Id.*; *see vonRosenberg v. Lawrence*, 849 F.3d 163, 168 (4th Cir. 2017). Second, there must be "exceptional circumstances" that justify abstention. *Gannett*, 286 F.3d at 741; *see Colorado River*, 424 U.S. at 818 (discussing circumstances); *Moses H. Cone*, 460 U.S. at 23-27 (same).

---

[4] Curiously, even though Mister brought the same claims against Mr. Podrog and Mr. Podrog is represented by the same counsel as Phase 2, he did not argue that he cannot be joined as a third-party defendant under Rule 20, which employs the same "arises out of" language as Rule 13(g).

### i. *Parallel Proceedings*

Whether the state and federal suits are "parallel" is a "threshold question." *Barcoding, Inc. v. Genet*, Civ. No. JKB-11-2026, 2011 WL 4632575, at *3 (D. Md. Sept. 30, 2011). Suits are "parallel" in this sense if "substantially the same parties litigate substantially the same issues in different forums." *vonRosenberg*, 849 F.3d at 168 (quoting *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991)). Overlapping legal theories and factual allegations are not enough. *See Barcoding*, 2011 WL 4632575, at *3. If, however, the suits are between the same parties and present the same issues, they are likely to be considered parallel. *See Schneider Elec. Bldgs. Critical Sys., Inc. v. Western Sur. Co.*, Civ. No. JKB-14-1890, 2015 WL 1656449, at *4 (D. Md. Apr. 14, 2015) (finding suits parallel when the parties were "identical" and the issues were "substantially, if not precisely, identical").

The suits here are parallel. Mister filed the same complaint against the same Defendants in state court as it has now filed in this Court. These are not suits that may involve overlapping legal theories, or deal in similar facts. These are the same suits.

Mister argues the two actions are not parallel for two reasons. First, Mister writes that "the same parties are not involved." (Opp'n to Phase 2 Mot. Dismiss 10, ECF No. 67.) That is not true. Mister is the complainant in both actions, and Phase 2 and Mr. Podrog are defendants in both actions. These are not "substantially the same parties," *vonRosenberg*, 849 F.3d at 168, these are *the same parties*. Mister asserts that the parties are substantially different because it chose to name four additional defendants in the state court action: Maritime Autowash, Inc. and Maritime Autowash II, Inc., parties that no longer exist because they merged into Phase 2, *see EEOC v. Phase 2 Invs., Inc.*, ___ F. Supp. 3d ___, 2018 WL 1851480, at *4 (D. Md. Apr. 17, 2018), and Podrog Maritime Investments I and II, what appear to be now-defunct Limited

Liability Corporations of which Mr. Podrog was president, (*see* State Court Action Compl. ¶¶ 8-10). Mister cannot avoid the doctrine of *Colorado River* by choosing to name additional related defendants (who may or may not exist) in the State Court Action.

Second, Mister contends that the "Anne Arundel action will not 'be an adequate vehicle for the complete and prompt resolution of the issues,'" because "regardless of the outcome of the Anne Arundel action, Mister and Phase 2 remain at odds with respect to the EEOC action." (Mister Opp'n Phase 2 Mot. Dismiss at 10 (quoting *vonRosenberg*, 849 F.3d at 168).) But no party is asking that the Court abstain from jurisdiction over the EEOC action. And a resolution of the State Court Action *would* "be a complete and prompt resolution" of the issues in the Cross-claim: they are *the same issues*. The Cross-claim is parallel to the State Court Action, and therefore the Court turns to whether extraordinary circumstances justify abstention.

### ii. *Extraordinary Circumstances*

The Supreme Court has set forth six factors to consider under the "extraordinary circumstances" test: "(1) [whether the court first assuming jurisdiction has] jurisdiction over the property; (2) [the] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal law is implicated; and (6) whether the state court proceedings are adequate to protect the parties' rights." *Gannett*, 286 F.3d at 741 (citing *Moses H. Cone*, 460 U.S. at 23, 26; *Colorado River*, 424 U.S. at 818). Another important factor to consider is the "motivation of the second lawsuit." *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 15 (1st Cir. 1990)). As the Supreme Court stated in *Moses H. Cone*, considering the "vexatious or reactive nature of either the federal or the state litigation . . . has considerable merit," in the context of determining the appropriateness of abstention. 460 U.S. at 17 n.20.

The Supreme Court has "cautioned against mechanical application" of these factors. *Schneider Elec.*, 2015 WL 1656449, at *4 (citing *Moses H. Cone*, 460 U.S. at 15-16). Rather, the Court favors a "careful balancing of the important factors as they apply in a given case." *Moses H. Cone*, 460 U.S. at 16. In other words, this analysis "is not a 'hard-and-fast' one in which application of a 'checklist' dictates the outcome." *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005).

The final four factors weigh slightly in favor of abstention. The Fourth factor—the order in which jurisdiction was obtained—is a wash. The state court took jurisdiction over these cross-claims in January of 2018, four months before they were brought in this Court. A difference of a few months, however, is not "particularly significant," *see Barcoding*, 2011 WL 4632575, at *5, and this Court and the state court appear to be at roughly the same stage in the litigation, as motions to dismiss are pending before both courts. As to the fifth and sixth factors—considering whether federal law is implicated and whether the state court proceeding is adequate to protect the parties' rights—these claims are entirely state law claims that Mister chose to bring in state court, at least originally. It cannot now aver that a federal forum is necessary to protect its rights with regard to these claims.

The "motivation behind the second lawsuit" is particularly important in this case, *see Villa Marina Yacht Sales*, 915 F.2d at 15, and weighs heavily in favor of abstention. It is important to highlight that it was *Mister's* choice to file this action originally in state court. Mister, in its opposition to Phase 2's motion to dismiss, wrote that it filed the State Court Action on January 19, 2018 "to preserve its rights before expiration of the statute of limitations." But Mister subsequently explained that, in fact, it did not believe the three-year statute of limitations was approaching on January 19, 2018. (*See* Mister Supp. Brief. At 3.) Moreover, even if Mister

*had* believed it needed to file these claims by January 19, 2018 (or thereabouts), there is no reason it could not have filed them in this Court.[5] Mister is effectively seeking what many plaintiffs may wish for but cannot have: the chance to bring claims in one court and then jump to a different court when it suits them better. *Cf. Am. Int'l Underwriters (Philippines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1261 (9th Cir. 1988) ("[The plaintiff] should not be permitted to accomplish, by the *refiling* of its state court complaint, what would clearly be prohibited if [the plaintiff] tried to *remove* to [federal] court.").

But, despite Mister's confusing actions, the Court finds that the first three *Colorado River* factors weigh in favor of retaining jurisdiction, and that ultimately "wise judicial administration" is best served by doing so. The first two factors clearly weigh in favor of retaining jurisdiction; *i.e.*, they do not illuminate extraordinary circumstances at play in this case. The state court has not taken *in rem* jurisdiction over any property, and the federal forum, a half-hour's drive from the state court, is not inconvenient for either party. *See Colorado River*, 424 U.S. at 820 (finding a 300 mile distance between the state and federal courthouses significant); *Schneider Elec.*, 2015 WL 1656449, at *4 ("[T]he state and federal courts are both within the Baltimore metropolitan area so neither can be considered 'inconvenient.'").

The third factor is often significant, *see Moses H. Cone*, 460 U.S. at 19; *Gannett*, 286 F.3d at 744, and it does not tip the scales in favor of abstention. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly

---

[5] Mister *chose* not to file these claims in this Court in the first instance because it believed that doing so would "lower the likelihood that the [earlier] motions to dismiss would be granted," and if the Court granted those motions "the need for additional litigation would have been substantially reduced." (Mister Supp. Brief. at 2-3.) Mister does not explain how filing the Cross-claim in this Court would lower the likelihood of the Court granting its earlier motion to dismiss. (The Court presumes Mister is not implying that the Court would be biased against Mister for filing cross-claims.) As for Mister's second reason, the Court agrees that if it had granted the motions to dismiss, the need for additional litigation would have been "substantially reduced," but it fails to see how this bears on the question of whether to file the Cross-claim in this Court as opposed to creating parallel proceedings in two different courts.

reaching different results." *Gannett*, 286 F.3d at 744 (quoting *Am. Int'l Underwriters*, 843 F.2d at 1258). At first glance, the danger of piecemeal litigation in this case is apparent: if the Court retains jurisdiction, two different tribunals will consider the same issues, the parties will engage in duplicitous litigation, and there is a possibility that this Court and the state court will reach different results. But, it is important to remember the general rule "that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court." *Colorado River*, 424 U.S. at 817 (internal quotation marks omitted). That is, there must be some problem arising from the "piecemeal" nature of the litigation *beyond* "those inefficiencies inherent in duplicative proceedings." *Gannett*, 286 F.3d at 745. In *Colorado River*, for example, that plus factor was a "clear federal policy" for "avoidance of piecemeal adjudication of water rights in a river system," which was the nature of the dispute. 424 U.S. at 819. In contrast, in *Moses H. Cone*, the relevant federal law "*require[d]* piecemeal resolution," and the Court found that *Colorado River* abstention was inappropriate. 460 U.S. at 20 (emphasis in the original). Here, there is no federal law or policy that points a finger in either direction, nor any other plus factor that suggests the danger of piecemeal litigation is beyond that which is attendant to any parallel proceedings in multiple courts. Furthermore, Mister, through its supplemental briefing, has now represented to the Court that it will dismiss the State Court Action if its claims were to proceed in this Court, and therefore, the danger of duplicitous litigation and conflicting results is mitigated in this case.

Finally, the relationship between these claims and the underlying Title VII action is worth consideration. This case has been assigned to a Magistrate Judge of this Court for settlement proceedings, and a settlement negotiation is scheduled for September 6, 2018 (*see* ECF No. 72), two months before the state court would even hold a hearing on the motions to dismiss. It is

unlikely that Mister and Phase 2, as Defendants in the underlying action, would be able to reach a settlement agreement with the EEOC if it were unclear whether Mister could even *bring* these indemnity claims against Phase 2 (leaving aside whether Mister can *succeed* on them).  Mister may have erred in filing these claims in state court, but the Court agrees with Mister that this federal forum is now the most appropriate one for the parties to sort out their differences, including any disputes between co-defendants.  Thus, despite Mister's behavior, the Court finds that "wise judicial administration," the keystone of *Colorado River*, tips the scales in favor of retaining jurisdiction; scales that were rigged heavily against abstention at the outset.  *See Moses H. Cone*, 460 U.S. at 16 ("[T]he balance [is] heavily weighted in favor of the exercise of jurisdiction.").  The Court will therefore turn to the Sellers' various arguments as to why, even if the Court does not abstain under *Colorado River*, the claims against them should be dismissed under Rule 12(b)(6).

### c.  *Rule 12(b)(6)*

The Sellers ask the Court to dismiss all of Mister's claims under Rule 12(b)(6).  They argue that Counts I and III are barred because Mister released the Sellers from those claims; that Count II fails because Mister fails to allege that the Sellers breached the terms of the APA regarding provision of Mister's legal defense; that all claims are barred against Mr. Podrog because they were not brought within two years of the execution of the APA; and that Count IV fails because Mister did not allege it was in a debtor-creditor relationship with Mr. Podrog.  The Court will address each argument in turn.

### i.  *Release*

The Sellers contend that Mister released them from Counts I and III.  They are incorrect.

For reasons that will become clear, it is helpful to begin with what it means to "indemnify" another party to a contract. Black's Law Dictionary defines "Indemnity" as "A duty to make good any loss, damage, or liability incurred by another." (10th ed. 2014). It defines "Indemnify" as "To reimburse (another) for a loss suffered because of a third party's or one's own act or default." *Id.*

In the APA, the Sellers agreed to indemnify Mister for any "Losses" stemming from the Sellers' breach of the APA and the Seller's intentional misrepresentations with regard to the APA. Again, "Losses," are defined very broadly. So, the Sellers agreed to reimburse Mister for any losses it may suffer as a result of the Sellers breaching the APA or as a result of the Sellers having intentionally misrepresented themselves in regard to the APA. The Sellers seem to agree with this.

In the Claim Notices, Mister asserted four claims for indemnity, *i.e.*, four claims seeking compensation for losses Mister had allegedly incurred as a result of breaches or misrepresentation in regard to the APA. Claim No. 3 was for losses relating to the Sellers' alleged breach of representations and warranties in Sections 2.8(b) and 2.18 of the APA. The Sellers seem to agree with all of this. (*See* Phase 2 Mot. Dismiss Mem. Supp. at 4, 12-13.)

In the Release, Mister released the Sellers from all claims in the Claim Notices "[w]ith the exception of . . . the prior agreement by Sellers to indemnify Buyer for Losses, if any, as defined in the Asset Purchase Agreement, that relate to Claim No. 3 described in the [Claim Notices]." Therefore Mister can bring claims for indemnification under the APA if those claims relate to alleged breaches of representations and warranties in Sections 2.8(b) and 2.18 of the APA. The Sellers seem to agree with this as well. (*See* Phase 2 Mot. Dismiss Mem. Supp. at 4 ("Thus, except for the indemnity obligations arising out of Claim No. 3, *all* other claims were

"release[d] and forever discharge[d]." (emphasis in the original).)  The Sellers, therefore, *should* agree that Mister can bring claims for breach and intentional misrepresentation related to Sections 2.8(b) and 2.18 of the APA.  But, for reasons that are not entirely clear, they do not.

The Sellers' argument appears to result from a misunderstanding of the term "indemnity."  The Sellers concede that Mister can bring claims arising from the Sellers' "indemnity obligations arising out of Claim No. 3" (Phase 2 Mot. Dismiss Mem. Supp. at 4), but then argue Mister cannot bring Counts I and III.  Counts I and III, however, state causes of action for alleged breaches and misrepresentations surrounding Sections 2.8(b) and 2.18 of the APA— the subject matter of Claim No. 3—and seek compensation for losses resulting from those alleged breaches and misrepresentations, *i.e.*, they seek indemnity.  To be clear, Mister cannot seek damages *beyond* its "Losses, if any, as defined in the Asset Purchase Agreement that relate to Claim No. 3."  (*See* Release.)  But it may seek those specific losses.  Thus, Counts I and III will not be dismissed.

### ii.  *Provision of Defense*

In Count II, Mister seeks damages for the Sellers' alleged violations of Sections 8.2 and 8.4 of the APA.  Specifically, Mister alleges that under those provisions, the Sellers were required to provide Mister with a defense to the EEOC action in this case but did not do so.  The Sellers argue that Mister's allegations, even if true, do not amount to a breach of those provisions.  Again, the Sellers are incorrect.

Section 8.2 provides that the Sellers will indemnify Mister for a broad range of losses. Section 8.4 states, in pertinent part, "that if the named parties to [an] action or proceeding include both the indemnifying party [*i.e.*, a seller] and the indemnified party [*i.e.*, Mister] and the indemnified party is advised that representation of both parties by the same counsel would be

18

inappropriate under applicable standards of professional conduct, the indemnified party may engage separate counsel at the expense of the indemnifying party."

Phase 2 (an indemnifying party) and Mister (an indemnified party) were named as Defendants in this action. Mister alleges that "[j]oint representation of [itself] and Defendant Phase 2 in the EEOC Action is inappropriate pursuant to the applicable standards of professional conduct," and that it "was advised by multiple lawyers that a claim conflict existed." (Cross-claim ¶ 55 and ¶ 55 n.1.) However, when Mister requested that Phase 2 provide it with separate counsel pursuant to Section 8.4 of the APA, Phase 2 "refused." (*Id.* ¶ 59.)

The Sellers do not argue that joint representation was proper (they do not concede it was improper either). Rather, according to the Sellers, "Mister does not allege that it was ever advised that 'representation of both parties by the same counsel would be inappropriate under applicable standards of professional conduct,'" and therefore Mister has not alleged a breach of section 8.4 of the APA. (Phase 2 Mot. Dismiss Mem. Supp. at 15 (quoting APA § 8.4).) But Mister *did* allege it was advised that dual-representation would be inappropriate. (Cross-claim ¶ 55 n.2.) So, again, the Sellers' argument is unclear. The Court is satisfied that Mister has stated a claim for indemnification related to an alleged breach of contract regarding provision of a defense. Perhaps the Sellers can prove at a later stage in these proceedings that Mister did not, in fact, require separate counsel in this matter, or that Mister paid unnecessary amounts for its independent counsel. But they cannot successfully argue that Mister did not allege it was advised of a need for separate counsel. It did so, and the Court will not dismiss Count II on this ground.

### iii. *Mr. Podrog's Individual Liability*

Mr. Podrog, individually, argues that Mister's claims are barred as against him because under the terms of the APA his liability for indemnity ended two years after the APA was executed, and these claims were brought well after that date.  Mr. Podrog misreads the APA.

Section 8.2(d) of the APA states in part:

> [T]he indemnification by Podrog personally shall be limited to a total indemnity amount, regardless of the number of claims, of Two Million Dollars ($2,000,000.00) and, except as otherwise set forth above, shall expire, terminate and be of no further force and effect two (2) years from the Closing Date.  Except for authority of Seller as provided in Section 2.2 and for fraud, any claim noted after that date against Podrog individually shall be null and void under any and all circumstances.

Mr. Podrog signed the APA on January 21, 2015.  Therefore, any claim noted against Mr. Podrog after January 21, 2017 is "null and void."  Mister noted the claims at issue in this case on July 16, 2015.  (*See* Claim Notices.)  Mister noted these claims against various entities, as well as Mr. Podrog individually.  Thus, under Section 8.2(d) of the APA, these claims are not "null and void" as against Mr. Podrog.

Mr. Podrog contends, contrary to the clear terms of the contract, that when the claims were noted makes no difference, and that his individual liability "expire[d]" two years from the closing date.  Under Mr. Podrog's interpretation of the contract, claims noted before January 21, 2017, but filed in court after that date, are, explicitly, *not* null and void.  But Mr. Podrog's *liability* for such claims would be "expire[d]."  That makes no sense.  Therefore, the Court rejects that interpretation.  *See Fister ex. rel Estate of Fister v. Allstate Life Ins. Co.*, 783 A.2d 194, 205 (Md. 2001) ("[W]e wish to avoid interpreting contract language between two parties in a manner that is void of a commonsensical perspective.").

#### iv. *Fraudulent Conveyance and the debtor-creditor relationship*

The Sellers make three arguments as to why Count IV should be dismissed: first, the transfer was pursuant to the APA; second, Mister was not a creditor when the conveyance was made; and third, Mister failed to allege that the conveyance was not for fair consideration. The third argument plainly fails. Mister alleged that "[t]here was not adequate consideration for the transfers of assets." (Cross-claim ¶ 112.) And the Sellers do not explain why the first argument is legally significant. Thus, the Court will focus its analysis on the Sellers' second argument: that a debtor-creditor relationship is a necessary element of a fraudulent conveyance claim under Maryland law, and that Mister did not allege it was a creditor of Mr. Podrog when the alleged conveyances occurred.

The relevant section of the MUFCA provides a cause of action for creditors against debtors who transfer assets in order to hide them from the creditors. *See* Md. Code Ann., Commercial Law § 15-204. The statute states

> Every conveyance made and every obligation incurred by a person who is or will be rendered insolvent by it is fraudulent **as to creditors** without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration.

*Id.* (emphasis added). As Maryland courts have explained, under MUFCA "[a] conveyance is fraudulent *as to creditors* if it is made by a person who is insolvent or who will be rendered insolvent by it." *Meese v. Meese*, 69 A.3d 53, 58 (Md. Ct. Spec. App. 2013) (emphasis added) (internal quotation marks and citations omitted). So, "[MUFCA] provides a remedy *if a creditor* demonstrates that a conveyance was made without fair consideration." *In re Rood*, 482 B.R. 132, 142 (D. Md. 2012) (emphasis added) (quoting *Bassi & Bellotti S.P.A. v. Transcontinental Granite, Inc.*, Civ. No. DKC 08-1309, 2011 WL 856366, at *9 (D. Md. Mar. 9, 2011). Mister

does not allege it was in a debtor-creditor relationship with Mr. Podrog, *i.e.* that he owed Mister any money, when he effected the alleged conveyances.

Despite the clear text of the statute and interpretation of it by Maryland and Federal courts, Mister asserts that the MUFCA does not require the existence of a debtor-creditor relationship. It cites to *Greystone Operations, LLC v. Steinberg*, No. 454, Sept. Term, 2016, 2017 WL 1365365 (Md. Ct. Spec. App. Apr. 12, 2017) for that proposition. *Greystone* does Mister no favors. First, *Greystone* is an unreported opinion of the Maryland Court of Special Appeals, and as such "is neither precedent within the rule of stare decisis nor persuasive authority." Md. Rule 1-104(a). Second, *Greystone* clearly states that the existence of a debtor-creditor relationship is an element of a MUFCA claim. *See* 2017 WL 1365365, at *3 ("[T]he elements of a fraudulent conveyance under this statute are: 1) a conveyance; 2) the debtor either already is insolvent, or will be made insolvent by this conveyance; 3) **the existence of a debtor-creditor relationship**; and 4) lack of fair consideration." (emphasis added)).[6] *Greystone* only reinforces the Sellers' argument that Mister must plead the existence of a debtor-creditor relationship to state a claim for a violation of the MUFCA. Because Mister did not do so, Count IV will be dismissed.

## IV. *Conclusion*

For the reasons stated above, the Court will deny in part and grant in part the Sellers' motions to dismiss. The Court will deny the motions to the extent that it will not abstain under *Colorado River*, and Counts I, II, and III are not dismissed as against either Phase 2 or Mr.

---

[6] In *Greystone*, the conveyance was technically between an LLC and a third-party, and not the debtor and a third-party, but the trial court found that the LLC was simply the alter-ego of the debtor (he was the sole member of the LLC), and therefore the trial court essentially pierced the corporate veil to find that the transaction was fraudulent. 2017 WL 1365365, at *1-*4. The Court of Special Appeals largely agreed with the trial court's analysis. Mister makes no argument that Mr. Podrog was a debtor at the time of the conveyance but attempted to sidestep the MUFCA by effecting the conveyance via a shell corporation.

Podrog.  The Court will grant the motions to the extent that it will dismiss Count IV against both Phase 2 and Mr. Podrog.  Mister has represented to the Court that it will move for dismissal of its complaint in the Anne Arundel Circuit Court if this Court denied the Sellers' motions to dismiss.  (*See* Mister Supp. Brief at 3.)  Accordingly, Mister will be ordered to notify the Court within seven days of having moved the state court for dismissal.

DATED this 6th  day of August, 2018.

BY THE COURT:


_____/s/_____
James K. Bredar
Chief Judge